Mark W. Lapham, Esq.  SBN 146352
**LAW OFFICES OF MARK W. LAPHAM**
751 Diablo Rd.
Danville, CA 94526
Tel:  925. 837.9007
Fax:  925.406.1616
Email:  marklapham@sbcglobal.net

Attorney for Plaintiff,
TSUNEYOSHI SURUKI

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TSUNEYOSHI SURUKI, | Case No.: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | 1. **Wrongful Foreclosure;** |
| | 2. **Fraud;** |
| OCWEN LOAN SERVICING, LLC; | 3. **Violation of Business and** |
| MORTGAGE ELECTRONIC | **Profs. Code, Section 17200,** *et seq.***;** |
| REGISTRATION SYSTEMS, INC; FIRST | 4. **Unjust Enrichment;** |
| AMERICAN TRUSTEE SERVICING | 5. **Quite Title; and** |
| SOLUTIONS, LLC; HSBC BANK USA, | 6. **Accounting** |
| NATIONAL ASSOCIATION, AS | |
| TRUSTEE FOR FREMONT HOME LOAN | |
| TRUST 2006-B, MORTGAGE-BACKED | **Jury Trial Demanded** |
| CERTIFICATES, SERIES 2006-B; and | |
| DOES 1 through 100, inclusive, | |
| Defendant(s). | |

TSUNEYOSHI SURUKI (hereinafter, "Plaintiff") sues Ocwen Loan Servicing, LLC;

Mortgage Electronic Registration Systems, Inc.; First American Trustee Servicing Solutions, LLC;

and HSBC Bank USA, National Association, as Trustee for the Fremont Home Loan Trust,

Mortgage-Backed Certificates, Series 2006-B (collectively "Defendants") for Wrongful Foreclosure,

Fraud, Violation of the California Business & Professions Code, Section 17200 *et seq.*, Cancellation

of False Recorded Instruments against Plaintiff's Real Property, Unjust Enrichment. Plaintiff also seeks to enjoin Defendants to reverse and nullify the illegal sale of the Plaintiff's real property, which is the subject of this action, and restitution for mortgage payments and fees and costs improperly collected by Defendants from Plaintiff, for an accounting to determine the amount to be returned to Plaintiff and for declaratory relief.

**A. NAMED PARTIES AND JURISDICTION**

1. Plaintiff resides, and is domiciled, in California. At all material times, Plaintiff was, and remains, the owner of property located at 390 Biscayne Avenue, Foster City, County of San Mateo, California 94044, A.P.N. 094-950-380-9, which is the subject of this action (hereinafter "Property" or "Subject Property").

2. Defendant Ocwen Loan Servicing, LLC  (hereinafter, "OCWEN"), a subsidiary of Ocwen Financial Corporation, is a loan servicer, servicing residential mortgages on behalf of lenders, including trustees and investors of mortgage-backed securities trust. OCWEN's main offices are located at 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409.

3. Defendant Mortgage Electronic Registration Systems, Inc. (hereinafter, "MERS") is organized and existing under the laws of the State of Delaware with corporate headquarters located at 1818 Library Street, Reston, VA  20190. MERS is not a financial lending institution; it tracks the ownership interests and servicing rights in mortgage loans and holds title to mortgages solely as a nominee for its member-lenders which subscribe to MERS' services. MERS was historically the original nominal beneficiary in the DOT, but it is not (and never) named in any capacity in the underlying mortgage Note.

4. Defendant First American Trustee Servicing Solutions, LLC (hereinafter, "FIRST AMERICAN TRUSTEE") with its main office located at 6 Campus Circle, 2nd Floor, Westlake, TX 76262.  FIRST AMERICAN TRUSTEE schedules and conducts trustee's (foreclosure) sales of real property. FIRST AMERICAN TRUSTEE is not the original trustee in Plaintiff's DOT.

5. Defendant HSBC Bank USA, National Association (hereinafter, "HSBC"), holds itself out as Trustee for the Fremont Home Loan Trust, Mortgage-Backed Certificates, Series 2006-B (hereinafter, the "FREMONT HOME LOAN TRUST 2006-B"), a securitization trust entity. HSBC's

1  corporate trust office as listed in the governing securization agreement and trust instrument (*i.e.*,

2  Pooling and Servicing Agreement dated August 1, 2006) is at 452 Fifth Avenue, New York, New

3  York 10018. HSBC, or the REMIC securitization trust itself, is <u>not</u> the original lender or a party to

4  the original loan transaction.

5      6.  This Court has jurisdiction of this action as the residential real property, which is the subject

6  of this action, is situated in San Mateo County, California and the acts complained of occurred in

7  Foster City, California. The amount in controversy exceeds $75,000 and there exists diversity of the

8  parties hereto.

9  **B. <u>MATERIAL FACTS COMMON TO ALL COUNTS</u>**

10     7.  On April 20, 2006, Plaintiff as "Borrower" executed a mortgage loan relating to the Subject

11  Property, which consists of a Deed of Trust ("DOT") and 30-year Adjustable Rate Note ("Note").

12  The DOT identifies Fremont Investment and Loan ("FREMONT INVESTMENT & LOAN") as

13  "Lender"; Fremont General Credit Corporation ("FREMONT GENERAL CREDIT") as "Trustee";

14  and Mortgage Electronic Registration Systems, Inc. ("MERS"), "a separate corporation that is acting

15  solely as a nominee for lender and lender's successors and assigns", as (nominal) "Beneficiary."

16  MERS' assigned a Mortgage Identification Number (MIN), which is shown on the first page of the

17  DOT (*i.e.*, MIN: 1001944-7000196964-0). <u>MERS was not referenced in the Note in any capacity</u>. A

18  true and correct copy of the DOT dated April 20, 2006, which was recorded in the official records of

19  the San Mateo County Recorder as Document No. 2006-063790 on April 28, 2006, is attached

20  hereto as **Exhibit "A"** and incorporated by reference as though fully set forth herein.

21     8.  FREMONT INVESTMENT & LOAN is also the original loan servicer. Shortly after Litton

22  Loan Servicing, LP (hereinafter, "LITTON") acquired FREMONT INVESTMENT & LOAN in

23  June 2008, LITTON took over servicing of the loan. Ocwen Loan Servicing, LLC ("OCWEN")

24  later succeeded LITTON and held itself as the purported current servicer of Plaintiff's Mortgage

25  Loan.

26     9.  Shortly after loan closing, original lender FREMONT INVESTMENT & LOAN, in fact,

27  sold Plaintiff's Mortgage Loan in the secondary market for securitization. Pursuant to a binding

28  Mortgage Loan Purchase Agreement dated August 1, 2006 (hereinafter, the "MLPA"), which was

1   executed under oath and filed with the U.S. Securities and Exchange Commission (SEC) on August

2   21, 2006 (under SEC File Nos. 333-91565, 333-132540-01), FREMONT INVESTMENT & LOAN,

3   acting as "sponsor" and "seller", bundled the Subject Loan in a pool with other similar residential

4   mortgages in its portfolio and irrevocably sold it, without recourse, on <u>August 1, 2006</u> (*i.e.*, the

5   "Cut-Off Date" of the mortgage securitization) to its affiliate Fremont Mortgage Securities

6   Corporation (hereinafter, "FREMONT MORTGAGE SECURITIES"), the interim loan purchaser

7   and "depositor" in the securitization transaction. *See* true and correct copy of the MLPA attached

8   hereto as **Exhibit "B"** and incorporated by reference as though fully set forth herein. (Also available

9   for download at SEC's web site: http://www.secinfo.com/dsVsb.v3c.b.htm.) **This was first sale of**

10  **Plaintiff's Mortgage Loan, but <u>without</u> its effective assignment and transfer from FREMONT**

11  **INVESTMENT & LOAN to FREMONT MORTGAGE SECURITIES in contravention of the**

12  **terms of the binding MLPA.**

13      10.  Pursuant to a governing trust agreement and instrument called the Pooling and Servicing

14  Agreement dated August 1, 2006 (the "PSA") that was executed under oath and also filed with the

15  SEC on August 21, 2006 (reference SEC File Nos. 333-91565, 333-132540-01), Depositor

16  FREMONT MORTGAGE SECURITIES created a special purposed vehicle (SPV) formed as a

17  mortgage-backed securities trust ("MBS trust") with an election and continuing qualification of a

18  real estate mortgage investment conduit ("REMIC") in accordance with the Internal Revenue Code

19  (IRC) section 860 (the "Tax Code"). The securities trust is identified here as the Fremont Home

20  Loan Trust, Mortgage-Backed Certificates, Series 2006-B (also hereinafter referred to as the

21  "REMIC MBS Trust" or the "FREMONT HOME LOAN TRUST 2006-B"). *See* true and correct

22  copy of the PSA attached hereto as **Exhibit "C"** and incorporated by reference as though fully set

23  forth herein. (Also available at SEC's web site: http://www.secinfo.com/dsVsb.v3c.c.htm.)

24      11.  In exchange for the securities certificates (*i.e.*, collateralized debt obligations or "CDOs" in

25  tranches as bond certificates) that were issued by the REMIC MBS Trust, Depositor FREMONT

26  MORTGAGE SECURITIES irrevocably sold and securitized each of the pooled mortgage loans

27  (including the Subject Loan) into the FREMONT HOME LOAN TRUST 2006-B, on or before the

28  trust's specified "Closing Date" (concurrently also its REMIC "Start-up Day") on <u>August 3, 2006</u>.

1   HSBC Bank USA, National Association ("HSBC"), as trustee for the benefit of the certificate

2   holders of the FREMONT HOME LOAN TRUST 2006-B, is the fiduciary owner of the pooled

3   mortgage loans in the trust fund backing the securities certificates. **This was second and final sale**

4   **of Plaintiff's Mortgage Loan, albeit <u>without</u> the obligatory intervening assignment of DOT and**

5   **endorsement of the underlying original Note from FREMONT INVESTMENT & LOAN to**

6   **FREMONT MORTGAGE SECURITIES; and from FREMONT MORTGAGE SECURITIES**

7   **to HSBC, as Trustee for the FREMONT HOME LOAN TRUST 2006-B, as required pursuant**

8   **to the governing PSA**.

9       12.  Pursuant to the binding and governing PSA, the trust's "Closing Date/Startup Day" on

10  August 3, 2007, or 90 days thereafter (REMIC allowance), is the <u>absolute deadline</u> for HSBC as

11  Trustee for the FREMONT HOME LOAN TRUST 2006-B to legally receive and accept

12  contribution of any mortgage loan asset into its trust fund. Any belated transfer and assignment of a

13  mortgage loan to the securities trust is not allowed under the operative PSA; such "prohibited

14  transaction" is considered <u>null</u> and <u>void</u> according to the trust laws of the State of New York which

15  governs the MLPA and PSA. NY Est. Powers & Trust§ 7-2.4 states, "*If the trust is expressed in the*

16  *instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in*

17  *contravention of the trust, except as authorized by this article and by any other provision of law, is*

18  *void*."

19      13.  UBS INVESTMENT BANK (hereinafter, "UBS"), one of the securitization "lead

20  underwriters", offered to the public the securities (bond) certificates backed by the mortgage loans

21  in the trust fund. Multiple investors subsequently purchased the offered bond certificates, and

22  thereby becoming the "Certificateholders" of the FREMONT HOME LOAN TRUST 2006-B. After

23  deducting underwriting fees and trust expenses, the net proceeds of the sale of the securities

24  certificates were paid to Depositor FREMONT MORTGAGE SECURITIES. After taking its own

25  depositor's fees, a portion of the net proceeds was then used by FREMONT MORTGAGE

26  SECURITIES to pay for its purchase of Plaintiff's Mortgage Loan from securitization

27  Sponsor/Seller FREMONT INVESTMENT & LOAN.

28      14.  In accordance with the precise terms and REMIC provisions of the PSA (*i.e.*, required

1    "true sale" of each mortgage loan), securitization Sponsor/Seller FREMONT INVESTMENT &

2    LOAN and Depositor FREMONT MORTGAGE SECURITIES were each paid full value for

3    selling Plaintiff's Mortgage Loan in the verified securitization transaction. However, a review of

4    the chain of title of the property in the DOT from the official records of the San Mateo County

5    Recorder does not show any assignment of the mortgage (DOT) from original lender FREMONT

6    INVESTMENT & LOAN to any entity, on or before the August 3, 2006 Closing Date of the

7    REMIC MBS Trust, or 90 days thereafter.

8        15.  Therefore, there is <u>no record</u> of the required intervening assignments of DOT from original

9    lender FREMONT INVESTMENT & LOAN, as securitization sponsor and seller, to FREMONT

10   MORTGAGE SECURITIES, as depositor; and from this depositor to HSBC, Trustee for the

11   FREMONT HOME LOAN TRUST 2006-B, within the time frame allowed under the operative

12   PSA. This was a material breach of the binding and governing terms of the securitization agreements

13   and the trust instrument, which resulted to an <u>irreversible</u> break in the chain of title of the mortgaged

14   property and ownership of the subject Mortgage Loan (as no one can reverse time back to the 2006

15   REMIC Closing Date/Startup Day). The successor-lender to FREMONT INVESTMENT & LOAN,

16   as present beneficiary, mortgagee lender in and to Plaintiff's mortgage loan, is <u>unassigned</u> and

17   <u>undocumented,</u> and therefore <u>UNKNOWN</u> to date.

18       16.  Notwithstanding the warranties, representations and covenants of the securitization parties

19   under oath in the binding securitization agreements and trust instrument, the subject Mortgage Loan

20   was <u>without</u> the required <u>intervening</u> assignment of DOT and endorsement of the underlying original

21   mortgage Note to HSBC within the aforementioned REMIC deadline date. The multiple sale of

22   Plaintiff's Mortgage Loan was not in compliance with the binding MLPA and governing PSA; it was

23   in further violation of federal securities law regarding issuance of the REMIC mortgage-backed

24   securities certificates not actually backed by Plaintiff's Mortgage Loan (among others) as represented

25   and warranted by securitization parties to its investors, and also not in adherence with the law

26   requiring the public recording of an effective assignment to perfect the legal transfer of the security

27   instrument (Plaintiff's DOT).

28       17.  Pursuant to Section 860 of the Internal Revenue Code, in order for an investment entity to

1    qualify as a REMIC, all steps in the contribution and transfer of the notes must be a "true" and

2    "complete" sale between the parties in order to achieve "bankruptcy remoteness." Upon formation

3    of the REMIC-qualified MBS Trust, the depositor sells the pooled mortgage loans in exchange for

4    the securities certificates issued by the trust.  Each step of the "true sale" process must be supported

5    by effective delivery and certification of acceptance of the receiving party of the endorsed mortgage

6    note and assigned deed of trust, reflecting the complete intervening assignments and transfers of

7    each mortgage loan from each assignor to the last assignee. Therefore, every transfer of the note(s)

8    must be a true purchase and sale, and, consequently the note must be endorsed from one entity to

9    another. The PSA required that any mortgage note/asset identified for inclusion in an entity seeking

10   REMIC status must be sold into the entity within the three-month time period from the closing

11   date/startup day of the REMIC.

12       18.  The governing trust documents in accordance with the requirements of the Tax Code

13   provide that only the depositor (in this case FREMONT MORTGAGE SECURITIES), and no other

14   entity, is permitted to make the final assignment and transfer of each mortgage loan to the REMIC

15   MBS trust, and the assignment must be made as of the "Closing Date/REMIC Startup Date" of the

16   trust to maintain the favorable pass-through tax status of the trust entity and to achieve bankruptcy

17   remoteness. In addition, only performing qualified mortgage loans that are not in default may be

18   placed into the REMIC MBS trust.  Once the trust owns a mortgage loan, only the trustee of the

19   REMIC MBS trust has the authority to foreclose, to appoint an agent to foreclose, to assign the deed

20   of trust or substitute a trustee under the deed of trust.

21       19.  The securitization of Plaintiff's Mortgage Loan is a transaction designed to comply with the

22   aforementioned requirements of the Tax Code. Specifically, the first "true sale" must transpire

23   between securitization Sponsor/Seller FREMONT INVESTMENT & LOAN and Depositor

24   FREMONT MORTGAGE SECURITIES; and the second sale must be from FREMONT

25   MORTGAGE SECURITIES to HSBC, as Trustee for the REMIC MBS Trust.

26   / / /

27   / / /

28   / / /

**I – THE CHAIN OF TITLE WAS IRREVERSIBLY BROKEN; HSBC HAS NO AUTHORITY UNDER THE BINDING AND GOVERNING PSA TO ACCEPT ANY MORTGAGE LOAN INTO THE TRUST FUND OF THE FREMONT HOME LOAN TRUST 2006-B AFTER THE REMIC DEADLINE.**

20.   HSBC, as Trustee for the FREMONT HOME LOAN TRUST 2006-B, only has the powers to act, which are conferred to the trustee by the governing PSA; it has no power or authority to act outside of the scope of the powers conferred upon the trustee under the trust agreement and instrument. HSBC could not take ANY action which conflicts with the terms and provisions of the PSA for conveyance of qualified mortgage loans into the FREMONT HOME LOAN TRUST 2006-B. Specifically, Defendant HSBC is strictly prohibited under the binding PSA to accept to its trust fund any belated mortgage assignment after the "Closing Date/Startup Day" of the REMIC MBS Trust on August 3, 2006, or 90 days after (REMIC allowance). As an exception, HSBC may only accept contribution of a "substitute mortgage loan" into the FREMONT HOME LOAN TRUST 2006-B after the trust's closing date as replacement of a non-qualified and defective loan (*e.g.*, missing note endorsements and mortgage assignments, etc.). However, even this exception must be completed not later than two (2) years from the trust's closing date (*i.e.*, on or before August 3, 2008).

**II – INVALID AND FRAUDULENT MERS' ASSIGNMENT OF DEED OF TRUST TO HSBC, AS TRUSTEE FOR THE FREMONT HOME LOAN TRUST 2006-B, WELL OVER FOUR (4) YEARS AFTER THE REMIC CLOSING DATE/STARTUP DAY.**

21.   The only mortgage assignment found on record with the San Mateo County Recorder was a statutorily defective and fraudulent **Assignment of Deed of Trust** dated January 6, 2011 that was issued by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"). This MERS' mortgage assignment to HSBC, as Trustee for the FREMONT HOME LOAN TRUST 2006-B, was well over four (4) years after the REMIC Closing Date/Startup Day on August 3, 2006; and it was executed by MERS who no longer has any agency relationship and authority with the original lender FREMONT INVESTMENT & LOAN or the unknown successor lender (*i.e.*, principal and nominator) in the DOT. *See* true and correct copy of this "**Assignment of DOT**",

1   which was recorded on <u>January 31, 2011</u> in the official records of the county recorder as Document

2   No. 2011-012527, as **Exhibit "D"** attached hereto and incorporated by reference though fully set

3   forth herein.

4      22.  While MERS stated in the mortgage transfer instrument that it was "*together with the*

5   *Promissory Note secured by said Deed of Trust*", the Assignment of DOT <u>does not</u> actually include

6   the concurrent endorsement of the underlying original mortgage Note.  MERS is neither the lender

7   nor the authorized agent of the unknown "successor-lender" in the Note.  It is not legally possible for

8   MERS to concurrently endorse the Note with its assignment of DOT to HSBC as Trustee for the

9   REMIC MBS Trust because MERS, in fact, is not the lender in the Note; MERS is not even

10   referenced in any capacity in said financial instrument. *The assignment of the lien without a transfer*

11   *of the debt was a nullity in law*." <u>Polhemus v. Trainer</u>, 30 Cal. 685; <u>Peters v. Jamestown Box Co</u>., 5

12   Cal. 334; <u>Hyde v. Mangan</u>, 88 Cal. 319;   Jones on Pledges, secs. 418, 419; <u>Van Ewan v.</u>

13   <u>Stanchfield</u>, 13 Minn. 75.   "*A lien is not assignable unless by the express language of the*

14   *statute.*"   (Jones on Liens, sec. 982; <u>Wingard v. Banning</u>, 39 Cal. 343; <u>Ruggles v. Walker</u>, 34 Vt.

15   468; <u>Wing v. Griffin</u>, 1 Smith, E.D. 162; <u>Holly v. Hungerford</u>, 8 Pick. 73; <u>Daubigny v. Duval</u>, 5

16   Tenn. 604.   California Supreme Court, <u>David, Belau & Co. v. National Sur. Co.</u> (1903), 139 Cal

17   223, 224 (1903) "*The note and mortgage are inseparable; the former as essential, the latter as an*

18   *incident. An assignment of the note carries the mortgage with it, while an assignment of the latter*

19   *alone is a nullity.*" <u>Carpenter v. Longan</u>, 83 U. S. 271 (1872), U.S. Supreme Court   "*California*

20   *courts have repeatedly allowed parties to pursue additional remedies for misconduct arising out of*

21   *a nonjudicial foreclosure sale when not inconsistent with the policies behind the statutes*."   Case

22   law in virtually every state follows *Carpenter*. <u>California Golf, L.L.C. v. Cooper</u> (2008) 163

23   Cal.App.4th 1053,1070. "*Whenever a court becomes aware that a contract is illegal, it has a duty*

24   *to refrain from entertaining an action to enforce the contract.*" "*Furthermore the court will not*

25   *permit the parties to maintain an action to settle or compromise a claim based on an illegal*

26   *contract.*"   <u>Bovard v. American Horse Enterprises, Inc</u>. (1988) 201 Cal.App.3d 832 (1988).

27      23.  MERS must prove an agency relationship with its principal. *See, e.g.*, *In Re Vargas*, 396

28   B.R. 511 (Bankr. C.D. Cal. 2008).  MERS has not provided any evidence that it has been re-

1  appointed as the nominal beneficiary by any purported subsequent holder of an interest in Plaintiff's

2  mortgage. MERS, in fact, exited the chain of title of Plaintiff's mortgage in 2006.  On its own,

3  MERS cannot arbitrarily re-assert itself into the chain of title of Plaintiff's mortgage.

4      24.  MERS' assignment of DOT to HSBC as Trustee for the FREMONT HOME LOAN

5  TRUST 2006-B is void because MERS never held any interest in the debt, that is, the Note, secured

6  by the deed of trust, *supra* ¶22.  Mortgage lenders and other entities such as loan servicers, known

7  as MERS' members, subscribe to the MERS' registration system and pay annual fees for the

8  electronic processing and tracking of ownership and transfers of mortgages. Members contractually

9  agree to appoint MERS to act as their common agent on all mortgages they register in the MERS®

10  System.  In order for MERS to act validly as the lender's (or its successors and assigns) nominal

11  beneficiary in the mortgage or deed of trust, there must be a continuous agency relationship and

12  authority between MERS and the member-lender (or member-servicer).

13      25.  Although MERS was originally designated as the lender's nominal beneficiary in the Deed

14  of Trust, the underlying Promissory Note in this instant case, which creates the legal obligation to

15  repay the debt, is not negotiated to MERS. Therefore, MERS cannot endorse the Note. The DOT and

16  Note have been irrevocably separated, making the security instrument (DOT) in Plaintiff's home

17  property a nullity.  In fact, the following are specifically stated on Page 67 of MERS' own

18  Procedures Manual (Release 23.0, 12/10/2012) – under <u>Transfer of Beneficial Rights</u>: *"Although the*

19  *MERS System® tracks changes in ownership of the beneficial rights for loans registered on the*

20  *MERS System®, MERS itself cannot transfer the beneficial rights to the debts. The debt can only be*

21  *transferred by properly endorsing the promissory note to the transferee."* MERS CANNOT

22  TRANSFER PROMISSORY NOTES because: (i) it is not a party to the alleged mortgage

23  indebtedness underlying the security instrument for which it serves as nominee; (ii) it has no legal

24  beneficial interest in the loan instrument underlying the security instrument for which its serves as

25  nominee; (iii) it has no interest at all in the promissory note evidencing the mortgage indebtedness;

26  (iv) it is never the owner of the promissory note and cannot foreclose on it; (v) it is never entitled to

27  receive borrower's monthly payments, nor is MERS ever entitled to receive the proceeds of a

28  foreclosure or deed of trust sale; and (vi) MERS has no financial or other interest in whether or not

1  a mortgage loan is repaid.

2  　26.  It should also be noted here that a valid transfer of a Note could only be accomplished by

3  negotiation and endorsement. UCC Article 3 (*Negotiable Instrument*). UCC does not recognize an

4  assignment of Deed of Trust as a valid method of transferring a Note. When a Note is sold, it has to

5  be indorsed the same way one basically signs a check for deposit or cashing. Under California law

6  the Note is not a bearer instrument, but an instrument payable only to a specifically identified

7  person, per Cal. Commercial Code § 3109; any transfer of the Note requires a legal negotiation,

8  endorsement and a physical delivery of the Note to the transferee to perfect the transfer, per Cal.

9  Commercial Codes §§ 3201, 3203, 3204.

10  　27.  Therefore, not only did MERS' mortgage assignment not transfer possession of the Note to

11  the FREMONT HOME LOAN TRUST 2006-B, which is fatal to its trustee's (HSBC) claim against

12  Plaintiff's Mortgage Loan, such deed transfer(s) alone split the DOT from the Note, thereby

13  rendering the debt unenforceable against the Plaintiff as a matter of law.  It is black letter law that

14  assignment of a deed of trust without the debt (Note) is a legal nullity. For all of these reasons, the

15  assignment of Plaintiff's DOT is null and void.

16  　28.  Moreover, the Assignment of DOT here was over four (4) years after the aforementioned

17  2006 REMIC deadline – a "prohibited transaction" pursuant to the operative trust agreement and

18  instrument.  It was also an invalid transfer of mortgage in accordance with the substantive laws of

19  the State of New York governing the PSA, as well as a blatant violation of the Tax Code.

20  　29.  When assets are transferred to a REMIC MBS Trust such as the FREMONT HOME LOAN

21  TRUST 2006-B, pursuant to the PSA, which is construed in accordance with and governed by trust

22  laws of the State of New York, there has to be actual delivery of the mortgage note in as perfect a

23  manner as possible; a "mere recital" is not sufficient  (and, endorsement of the mortgage note <u>in</u>

24  <u>blank</u> does <u>not</u> suffice either because there is nothing that indicates that something endorsed in blank

25  is trust property, rather than the trustee's or someone else's). Adherence to the governing

26  securitization agreement determines whether there was a transfer effected or not because under New

27  York trust laws a transfer not in compliance with the trust document(s) is <u>VOID</u>.

28  　30.  Under New York Trust Law, "*every sale, conveyance or other act of the trust on*

*contravention of the trust is VOID.*"  Non-compliance to the REMIC provisions of the governing trust agreements is also sufficient cause for the permanent termination of the tax-advantaged REMIC qualification and status of the FREMONT HOME LOAN TRUST 2006-B – with substantial tax penalties, retroactive from the year of violation.

31.  New York's common law trust principles, which are well settled, are relevant to the analysis here. Under New York law, for a trust to be valid, there are four essential elements:  (1) a designated beneficiary; (2) a designated trustee who is not the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) an actual delivery or legal assignment of the property to the trustee, with the intention of passing legal title to the trustee.  <u>Brown v. Spohr</u>, 180 N.Y. 201, 209-210 (N.Y. 1904).  With respect to Plaintiff's Mortgage Loan, there was no actual delivery or valid intervening endorsement of the original Promissory Note and assignment Deed of Trust to FREMONT HOME LOAN TRUST 2006-B, on or before the trust's closing date on August 3, 2006, or 90 days thereafter. Pursuant to the New York law, without a valid delivery of the asset in question to the trust, there are no rights conferred in the trustee under the common law. Thus, if the trust fails to acquire property, <u>then there is no trust over that property that may be enforced</u>.

32.  Additionally, where the method of transfer is set forth in the securitization agreements and the trust instrument (PSA) as in this instant case, it is not subject to any variance or exception. Congress has recognized the importance of strict compliance with trust agreements and New York Trust Law. Specifically, the bipartisan Congressional Oversight Panel observed, "*New York trust law requires strict compliance with the trust documents; any transaction by the trust that is in contravention of the trust documents is <u>void</u>, meaning that the transfer cannot actually take place as a matter of law.  Therefore, if the transfer for the underlying Note and DOT did not comply with the PSA, the transfer would be void, and the assets would <u>not</u> have been transferred to the trust.*" [*See* Congressional Oversight Panel Report: Congr. Oversight Panel, Oversight Report Examining the Consequences of Mortgage Irregularities for Financial Stability and Foreclosure Mitigation, at 15 (Nov. 16, 2010), available in its entirety at <u>http://www.gpo.gov/fdsys/pkg/CPRT-111JPRT61835/html/CPRT-111JPRT61835.htm</u>.]

33. Without the intervening endorsement of the original Promissory Note from original lender FREMONT INVESTMENT & LOAN to Depositor FREMONT MORTGAGE SECURITIES; and ultimately from this Depositor to HSBC, as Trustee for the FREMONT HOME LOAN TRUST 2006-B, on or before the Trust's Closing Date on August 3, 2006, or 90 days thereafter at most, any belated Assignment of DOT to the REMIC MBS Trust is invalid and void, not just voidable.

34. While Plaintiff's Mortgage Loan was sold in a verified securitization transaction, the fact remains to date that the FREMONT HOME LOAN TRUST 2006-B, or its Trustee HSBC, does not have any shred of legal evidence that proves it is the valid assignee and endorsee of a complete chain of assignment of the DOT and endorsement of the original mortgage Note. HSBC as Trustee, or the REMIC MBS Trust itself, never had any valid lien and legal standing in and to the subject Mortgage Loan.

35. To cover up the failed mortgage securitization and paper over the broken chain of title of the mortgaged property, despite full knowledge that Plaintiff's Mortgage Loan had long been sold in the securitization transaction in August 2006, MERS [who was no longer the nominal beneficiary in the DOT or authorized agent and nominee for the unassigned and unknown successor lender and present beneficiary] went ahead any way on its own to fraudulently assign Plaintiff's DOT (without the concurrent endorsement of the underlying mortgage Note) to HSBC, as Trustee for the FREMONT HOME LOAN TRUST 2006-B. Such belated and prohibited mortgage assignment was not, and cannot be, authorized under the operative PSA; it is null and void in accordance with substantive laws of the State of New York governing the securitization agreement and trust instrument.

## III - LOAN SERVICER'S CLAIM OF LEGAL STANDING AND/OR BENEFICIAL INTEREST IN AND TO PLAINTIFF'S MORTGAGE LOAN.

36. When LITTON acquired FREMONT INVESTMENT & LOAN in June 2008, the subject Mortgage Loan was no longer part of FREMONT INVESTMENT & LOAN's asset – having already sold it almost two (2) years earlier on August 1, 2006 in the verified securitization transaction. Given such timeline, LITTON could also not make a claim of any beneficial interest in and to Plaintiff's DOT.

37. LITTON was later succeeded by OCWEN only as "servicer" also of the mortgage loans in

the trust fund of the FREMONT HOME LOAN TRUST 2006-B. OCWEN's claim of mortgage servicing rights ("MSR") as the successor loan servicer or servicing agent of the REMIC MBS Trust, if any, does not encompass ownership in Plaintiff's Mortgage Loan. Such claim of legal standing and/or beneficial interest in the Subject Loan fails because of the botched securitization and the resulting irreversible broken chain of title. FREMONT HOME LOAN TRUST 2006-B, or HSBC, its Trustee, never received the intervening assignment of the DOT; and it cannot produce a valid chain of endorsement of the underlying original mortgage Note. Therefore, HSBC, as Trustee for the REMIC MBS Trust, not the valid lender, present beneficiary or secured creditor, cannot validly and legally authorize LITTON, or its successor OCWEN (or any entity for that matter), to act as "servicer" on Plaintiff's Mortgage Loan on behalf of the FREMONT HOME LOAN TRUST 2006-B. This is an incontrovertible fact.

38.  Plaintiff's claims in this lawsuit are predicated on the fact that neither OCWEN nor HSBC, as Trustee for the FREMONT HOME LOAN TRUST 2006-B, is a real party in interest with standing to initiate and pursue foreclosure activity through FIRST AMERICAN TRUSTEE against Plaintiff, or to collect mortgage payments from her.

## IV – PLAINTIFF DOES NOT CLAIM STANDING IN THE MORTGAGE SECURITIZATION.

39.  To be clear, the right of the lender to sell and securitize Plaintiff's Mortgage Loan is not under dispute here. The Plaintiff is obviously not party to the securitization contracts (in this case, the MLPA and PSA). This means Plaintiff cannot enforce the terms of the PSA. But there's a major difference between claiming that sort of right under a PSA and pointing only to noncompliance with the PSA as evidence that the foreclosing party does not have standing. Put it another way, Plaintiff is not complaining about breaches of the PSA for the purposes of enforcing the PSA contract. Plaintiff is only referring to breaches of the PSA as evidence that her Mortgage Loan was not effectively and legally transferred to the securitization trust. The PSA is the document that purports to transfer the mortgage to the trust. Adherence to the governing PSA determines whether there was a transfer effected or not because under NY trust law, a transfer not in compliance with the trust's document is void. And if there isn't a valid transfer, there's no standing.

40.   Plaintiff is not claim any standing in the mortgage securitization but rather pointing out the fact that as a result of improper procedures and the failure of FREMONT INVESTMENT & LOAN and the securitization parties to follow their own governing securitization agreement(s) and trust instrument, the true owner of Plaintiff's Mortgage Loan is undocumented, unassigned, and therefore UNKNOWN to date. The botched securitization casts a cloud in the title that is detrimental to the Plaintiff because it renders the property securing her Mortgage Loan unmarketable with the title fatally defective.

### V – BROKEN CHAIN OF TITLE DETRIMENTAL TO PLAINTIFF

41.   The Plaintiff (mortgagor) herein relied on loan servicer OCWEN's (and its predecessor LITTON's) misrepresentations, and has been damaged in the following ways: 1) if the wrongful foreclosure of the Subject Property is not nullified and reversed by this Court, multiple other parties may still seek to enforce the alleged debt obligation against the mortgagor, a **double financial jeopardy**; 2) before and during the foreclosure proceedings, the mortgagor never had the opportunity to apply for a loan modification with the true lender (i.e., the undisclosed present beneficiary or real party in interest) who is the only valid authority to grant such modification, or even sell her property with a fatally defective chain of title to avoid the foreclosure; 3) mortgagor had been paying the wrong party for an undetermined amount of time and overpaid in interest and fees that were over calculated; 4) mortgagor is unable to determine whether her monthly mortgage payments were paid to the right party; and 5) mortgagor is now expending significant funds to cover the cost of attorney's fees and related costs to clear and regain title to the Property. Furthermore, because the title to the real estate property has been clouded fatally, a third party purchaser of Subject Property will find itself in legal limbo. What is injurious here to the Plaintiff is also detrimental to the public.

### VI – INVALID NOTICE OF DEFAULT AND
### NOTICES OF TRUSTEE'S SALE ISSUED BY FIRST AMERICAN TRUSTEE

42.   A **Notice of Default and Election to Sell Under Deed of Trust** ("**NOD**") dated September 8, 2010 was issued by FIRST AMERICAN TRUSTEE who particularly represented itself <u>not</u> as the original trustee in Plaintiff's DOT, but only as an "Agent for the Current Beneficiary." A true and

1  correct copy this "NOD" recorded on September 9, 2010 in the public records of the San Mateo

2  County Recorded as Document No. 2010-103713 is attached hereto as **Exhibit "E"** and

3  incorporated by reference though fully set forth herein.

4      43.  While the NOD recites <u>as a matter of historical record only</u> that MERS was the Beneficiary

5  in the DOT when such security instrument was recorded over four (4) years earlier on April 28,

6  2006, FIRST AMERICAN TRUSTEE <u>did not</u> specifically state whether MERS is still the "present

7  beneficiary" under the DOT. FIRST AMERICAN TRUSTEE <u>did not</u>, and <u>could not</u>, state so

8  because MERS was no longer the nominal Beneficiary in the DOT after the Plaintiff's Mortgage

9  Loan was irrevocably sold by original lender FREMONT INVESTMENT & LOAN to interim loan

10  purchase FREMONT MORTGAGE SECURITIES as the depositor in the verified securitization

11  transaction on August 1, 2006, albeit <u>without</u> an effective assignment of the DOT and endorsement

12  of the original mortgage Note from FREMONT INVESTMENT & LOAN to FREMONT

13  MORTGAGE SECURITIES (*supra*, ¶ 9).

14      44.  It further states in the NOD, "*to find out amount you must pay, or to arrange for payment to*

15  *stop foreclosure, or if your property is in foreclosure for any reason contact: HSBC Bank USA,*

16  *National Association, as Trustee under the Pooling and Servicing Agreement dated August 1, 2006,*

17  *Fremont Home Loan Trust 2006-B c/o First American Trustee Servicing Solutions, LLC [...]*"

18  However, such statement only suggests, but it <u>does not</u> particularly state that MERS or HSBC, as

19  Trustee for the FREMONT HOME LOAN TRUST 2006-B, is the "present beneficiary" in the

20  mortgage. In fact, MERS or HSBC (as Trustee for the REMIC MBS Trust) is not the present

21  beneficiary in the DOT because of the botched securitization of Plaintiff's Mortgage Loan in August

22  2006. There is also no supporting document to verify that FIRST AMERICAN TRUSTEE or HSBC

23  is the authorized agent of unassigned and unknown "present beneficiary" in the DOT – who was <u>not</u>

24  <u>specifically named anywhere in the NOD</u>. Here, FIRST AMERICAN TRUSTEE, not a validly

25  substituted trustee, had no authority from the <u>undisclosed</u> and <u>unknown</u> present beneficiary to issue

26  such NOD against the Plaintiff's Mortgage Loan. The NOD was statutorily defective, and therefore

27  a nullity.

28      45.  <u>Without</u> specifically stating or disclosing the name of the "present beneficiary" in the DOT,

FIRST AMERICAN TRUSTEE declared in the NOD the following false statements:

> "That by reason thereof, the <u>present beneficiary</u> under such deed of trust, has executed and delivered to said agent, a written declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

46.   Attached to the NOD was a "Declaration of Compliance" dated September 3, 2010 that was executed by LITTON LOAN SERVICING, LP ("LITTON") – representing itself either as "the mortgagee, beneficiary or authorized agent" and declaring the following under penalty of perjury:

> "The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed."

However, LITTON is, in fact, neither the mortgagee nor the beneficiary in the Mortgage Loan. Moreover, LITTON did not provide any evidence to support its representation here that it is the authorized agent of the unassigned and undocumented beneficiary in Plaintiff's Mortgage Loan.

47.   As cited throughout this complaint, Defendant MERS was no longer a valid nominal beneficiary after the closing date of the REMIC MBS Trust on August 3, 2006 because the mandated chain of title protocol was not followed causing the securitization of Plaintiff's Mortgage Loan to fail and irreversibly breaking its chain of title. In other words, there was no valid successor lender to FREMONT INVESTMENT & LOAN (*i.e.*, MERS' principal and nominator) after this original lender received the full loan value for selling Plaintiff's Mortgage Loan but failing to assign the DOT and endorse the Note to any entity. Such fact, which cannot be disputed, remains to date. Similarly, neither HSBC, as Trustee for the FREMONT HOME LOAN TRUST 2006-B, nor LITTON, its servicing agent, is a valid mortgagee and beneficiary because of the failed mortgage securitization. LITTON may be servicer of the mortgage loans in the trust fund of the FREMONT HOME LOAN TRUST 2006-B, but it is not a valid or authorized servicer on Subject Loan (as result of the botched securitization). Under Section 2924(a)(1) of California's non-judicial foreclosure statute, only a "trustee, mortgagee, or beneficiary or any of its authorized agents" may issue and record a NOD. Notably, nowhere in the NOD did FIRST AMERICAN TRUSTEE specifically

1    referred to MERS, HSBC as Trustee of the REMIC MBS Trust or LITTON as the present

2    beneficiary in Plaintiff's DOT.

3        48.   Therefore, FIRST AMERICAN TRUSTEE had no authority and power to issue the NOD;

4    and such NOD was invalid with no legal force and effect. Moreover, Section 2924(a)(1)(C) of the

5    non-judicial foreclosure statute requires a statement in the NOD setting forth the nature of each

6    breach actually known to the beneficiary. Here, FIRST AMERICAN TRUSTEE did not provide

7    such information required in the NOD. The "Declaration of Compliance" purportedly pursuant to

8    Cal Civ. Code § 2923.5 that was attached to the NOD was made by LITTON, only a loan servicer

9    for the REMIC MBS Trust – who, as cited, is without any standing in the Plaintiff's Mortgage Loan

10   and not the mortgagee and beneficiary (or the authorized agent thereof) in the DOT. Such

11   declaration is knowingly false because the <u>valid</u> and <u>true</u> mortgagee, beneficiary or authorized agent

12   thereof never tried to contact the Plaintiff regarding her financial situation and options to

13   foreclosure. The NOD is statutorily defective and invalid; it is a nullity, and not in compliance with

14   the foreclosure laws of the State of California. This is yet another violation of the non-judicial

15   foreclosure statute.

16       49.   The following false mortgage and foreclosure instruments were also executed and recorded

17   in the official records of the county recorder:

18       i.   A **Substitution of Trustee** dated October 26, 2010 ("**1st SOT**") that was issued by

19   LITTON as Attorney-in-Fact for "HSBC BANK USA, NATIONAL ASSOCIATION, as Trustee

20   under the Pooling & Servicing Agreement dated August 1, 2006, FREMONT HOME LOAN

21   TRUST 2006-B." This 1st SOT was recorded as Instrument No. 2010-130356 on November 2,

22   2010. LITTON purports here to substitute here FIRST AMERICAN TRUSTEE in place of original

23   trustee, FREMONT GENERAL CREDIT. A true and correct copy the "**1st SOT**" is attached hereto

24   as **Exhibit "F"** and incorporated by reference as though fully set forth herein.

25       ii.   A **Notice of Trustee's Sale** dated December 10, 2010 ("**1st NOTS**") that was issued by

26   FIRST AMERICAN TRUSTEE and recorded as Instrument No. 2010-154219 on December 14,

27   2010. FIRST AMERICAN TRUSTEE scheduled here the foreclosure sale of the trust property by

28   public auction on January 4, 2011. The sale did not take place as scheduled. A true and correct copy

1    of the "**1st NOTS**" is attached hereto as **Exhibit "G"** and incorporated by reference as though fully

2    set forth herein.

3        iii. A new **Substitution of Trustee** dated December 22, 2011 ("**2nd SOT**") was issued by

4    OCWEN, as Attorney-in-Fact for "HSBC BANK USA, NATIONAL ASSOCIATION, Trustee for

5    FREMONT HOME LOAN TRUST 2006-B, MORTGAGE-BACKED CERTIFICATES, SERIES

6    2006-B." This 2nd SOT was recorded as Instrument No. 2012-000117 on January 3, 2012. OCWEN

7    purports here to substitute again FIRST AMERICAN TRUSTEE as Trustee under Plaintiff's DOT.

8    A true and correct copy the "**2nd SOT**" is attached hereto as **Exhibit "H"** and incorporated by

9    reference as though fully set forth herein.

10       iv. A subsequent **Notice of Trustee's Sale** dated January 6, 2012 ("**2nd NOTS**") was

11    issued and recorded by FIRST AMERICAN TRUSTEE as Instrument No. 2012-008537 on January

12    23, 2012 – rescheduling the foreclosure sale of the trust property on February 14, 2012. The sale did

13    not take place as set. A true and correct copy of the "**2nd NOTS**" is attached hereto as **Exhibit "I"**

14    and incorporated by reference as though fully set forth herein.

15       v. Oddly, another "**Substitution of Trustee** dated February 16, 2012 ("**3rd SOT**") was

16    issued by OCWEN, as Attorney-in-Fact for "HSBC BANK USA, NATIONAL ASSOCIATION, as

17    Trustee under the Pooling & Servicing Agreement dated August 1, 2006, FREMONT HOME

18    LOAN TRUST 2006-B." This 3rd trustee substitution was recorded on February 23, 2012 as

19    Instrument No. 2012-024228. OCWEN purports to substitute again FIRST AMERICAN TRUSTEE

20    as Trustee in Plaintiff's DOT. A true and correct copy the "**3rd SOT**" is attached hereto as **Exhibit**

21    **"J"** and incorporated by reference as though fully set forth herein.

22    50. FIRST AMERICAN TRUSTEE is neither a validly substituted trustee under Plaintiff's

23    DOT nor an authorized agent of the unassigned, undocumented and unknown Lender and present

24    Beneficiary. Pursuant to Covenant No. 24 of the DOT, only the Lender has the power and authority

25    to substitute the trustee. Specifically, Covenant No. 24 in the DOT (page 13 of 15) states,

26       "<u>Substitute Trustee</u>. <u>Lender</u>, at its option, may from time to time appoint a successor trustee
         to any Trustee appointed hereunder by an instrument acknowledged <u>by Lender</u> and recorded

27       in the office of the Recorder of the county in which the property is located. The instrument
         shall contain the name of the original Lender, Trustee and Borrower, the book and page

28       where this Security Instrument is recorded and the name and address of the successor trustee.

1   Without conveyance of the Property, the successor trustee shall succeed to all the title, power
    and duties conferred upon the Trustee herein and by Applicable Law. This procedure for
2   substitution of trustee shall govern to the exclusion of all other provisions for substitution."
    [Portion hereof <u>underlined</u> for emphasis.]
3

4       HSBC, as Trustee for the FREMONT HOME LOAN TRUST 2006-B, is not a valid successor

5   lender in the promissory note or present beneficiary under the DOT. Therefore, LITTON LOAN and

6   OCWEN as Attorney-in-Fact for HSBC do not have right and authority to issue the aforementioned

7   Substitutions of Trustee. Such instruments are each null and void, not just voidable, for the

8   additional reason that, under Section 2934(a)(1)(A) of California's non-judicial foreclosure statute,

9   all beneficiaries must acknowledge and record the Substitution of Trustee.

10      51.  Likewise, the aforementioned Notices of Trustee's Sale flow from an invalid and false

11  Assignment of DOT (¶¶ 21 to 35, *see* also Exhibit "D"), void Notice of Default (¶¶ 42 to 48, *see*

12  also NOD - Exhibit "E"); and they were not issued on behalf of the true mortgagee or present

13  beneficiary.

14      52.  To cure the purported loan default and arrears, Plaintiff was specifically quoted by OCWEN

15  to pay the full amount of <u>$183,142.39</u>. On April 26, 2012, which was one (1) day before the

16  scheduled foreclosure sale of her home property, Plaintiff wired <u>$183,142.39</u> to OCWEN. A true

17  and correct copy of the "**Wire Transfer Confirmation**" for said amount paid by Plaintiff to

18  OCWEN on April 26, 2012 as **Exhibit "K"** is attached hereto and incorporated by reference though

19  fully set forth herein. Notwithstanding, invalid substitute trustee FIRST AMERICAN TRUSTEE

20  sold Plaintiff's home property anyway in the foreclosure auction on April 27, 2012. Then, OCWEN

21  did not return Plaintiff's payment of $183,142.39 until almost one month after on May 23, 2012,

22  stating in the wire transfer return: "Insufficient to Cure Loan."

23                    **VII – INVALID TRUSTEE'S DEED UPON SALE**

24                     **ISSUED BY FIRST AMERICAN TRUSTEE**

25      53.  A **Trustee's Deed Upon Sale** ("**TDUS**") dated May 1, 2012 was executed by FIRST

26  AMERICAN TRUSTEE as "duly appointed Trustee" – ostensibly granting the property securing the

27  mortgage, but without covenant or warranty, express or implied to DISTRESSED HOME

28  SOLUTIONS, LLC. A true and correct copy of this "**TDUS**", which was recorded in the official

records of the San Mateo County Recorded on May 8, 2012 as Instrument No. 2012-064596, is

attached hereto as **Exhibit "L"** and incorporated by reference though fully set forth herein.

54. Defendant FIRST AMERICAN TRUSTEE falsely stated in the TDUS,

> "All requirements of law regarding mailing of copies of the notices or the publication of Notice of Default or the personal delivery of the copy of the Notice of Default and the posting, and publication of copies of the Notice of a Sale have been met.

> Said property was sold by said Trustee at public auction on 4/27/2012 at the place named in the Notice of Sale, in the County of SAN MATEO, CALIFORNIA, in which the property is situated. Grantee, being the highest bidder at said sale, became the purchaser of said property and paid therefore to said trustee the amount of $990,000.00 in lawful money of the United States, or by satisfaction, pro tanto, of the obligations then secured by said Deed of Trust"

55. The above-cited statements are knowingly false. FIRST AMERICAN TRUSTEE knew (or

should have known) that the subject Mortgage Loan had long been sold in August 2006 but its

securitization under the FREMONT HOME LOAN TRUST 2006-B had failed. HSBC as Trustee

for this REMIC MBS Trust has never been validly assigned as beneficiary in the DOT within the

absolute REMIC deadline (on or before August 3, 2006, or 90 days after) pursuant to the governing

PSA; and FIRST AMERICAN TRUSTEE has no authority from the unassigned, undocumented and

unknown real party in interest, present beneficiary and secured lender in the subject Mortgage Loan

to act as trustee under Plaintiff's DOT, to issue the notices of default and sale, and proceed with the

foreclosure sale of the mortgaged property.

56. California Civil Code Section 2924 provides that a power of sale shall not be exercised until

"*the trustee, mortgagee, or beneficiary, or any of their authorized agent shall first file for record, in*

*the office of the recorder of each county wherein the mortgaged or trust property or some part or*

*parcel thereof is situated, a notice of default.*" In this instant case as stated, there is no valid NOD or

NOTS that was issued and recorded by instruction and authority of the unknown "*present*

*beneficiary"* and "*true lender.*" Specifically, Covenant No. 22 in the Deed of Trust [Page 13 of 15]

states,

> "**Acceleration; Remedies**. Lender shall give notice to Borrower prior to accelerating the following Borrower's breach of any covenant or agreement in this Security Instrument [. . .] The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower right to reinstate after acceleration

and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale [. . .]

If <u>Lender</u> invokes the power of sale, <u>Lender</u> shall execute or cause <u>Trustee</u> to execute a <u>written notice of the occurrence of an event of default</u> and <u>of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law.</u> After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines [. . .]"  [Portion hereof <u>underlined</u> for emphasis.]

While this complaint identified and alleged the identity of the unassigned and undocumented transferee(s) or assignee(s), there is no legal document perfecting the transfer of Plaintiff's Mortgage Loan in the public chain of title. Under Section 2924 there can be no foreclosure, because there is no longer a legal beneficiary recorded in the public chain of title.

57.   Moreover, Section 2924(a)(1)(C) provides that the NOD must include a statement setting forth the nature of each breach actually known to the beneficiary. As cited hereinbefore, when MERS invalidly and fraudulently assigned the DOT (without the contemporaneous endorsement of the original Note) to HSBC over 4 years after the closing date of the FREMONT HOME LOAN TRUST 2006-B, MERS was no longer a valid nominal beneficiary because the mandated chain of title protocol was not followed causing the securitization of the subject Mortgage Loan to fail.

58.   There is no evidence to support that FIRST AMERICAN TRUSTEE was authorized by the unassigned and undocumented present beneficiary in the subject Mortgage Loan to issue the NOD; and said NOD, as well as the subsequent NOTS, were each void and of no legal force and effect.

59.   Also as specified with particularity throughout this complaint, Defendants OCWEN or HSBC knew that they are not servicers or valid beneficiaries. Plaintiff alleges that her real property was falsely encumbered by parties through third party, off-record transactions. Parties known and unknown to Plaintiff have used a system of filing false instruments within the public in a scheme to dispossess Plaintiff of her home property. Plaintiff alleges that Defendants willfully, negligently and with malice aforethought, filed, or caused to file, a series of documents known to be false at the time of the execution and filing of these instruments in the public record against Plaintiff's interests.

60. In filing the fraudulent and void foreclosure documents, Defendants have committed criminally actionable mortgage fraud[1] and have otherwise engaged in felonious conduct.[2]

61. Due to the draconian consequences of a non-judicial foreclosure, strict compliance with the statute's provisions is required. *Miller v. Cote* (1982) 127 Cal. App. 3d 888, 894 ("*a trustee sale based on a statutorily deficient notice of default is invalid*").

62. As a result of the bungled mortgage securitization, and egregious violations of California's non-judicial foreclosure statute, none of the named defendants to this law suit is real party in interest with standing entitled to enforce Plaintiff's Mortgage Loan or to collect mortgage payments from him. It is true that California Civil Code § 2924, *et seq*. authorizes non-judicial foreclosure in this state. It is not the case, however, that the availability of a non-judicial foreclosure process somehow exempts lenders, trustees, beneficiaries, servicers, and the numerous other (sometimes ephemeral) entities involved in dealing with Plaintiff from following the law. *Sacchi v. Mortgage Electronic Registration Systems, Inc*., US Central District Court of California CV 11-1658 AHM (CWx), June 24, 2011.    In this instant case, nothing under California Civil Code § 2924 applies, unless there was a legal and effective intervening assignment of the Deed of Trust with the complete chain of endorsement of Promissory Note.

## C. CAUSES OF ACTION

### COUNT 1: WRONGFUL FORECLOSURE

### (Against MERS, OCWEN, HSBC and FIRST AMERICAN TRUSTEE)

63. Plaintiff refers to and incorporates by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

64. A trustee is an agent of the beneficiary of a mortgage loan and unlawful conduct of the

---

[1] Cal. Penal Code §532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following ... (4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omissions."

[2] California Penal Code Section 115 provides that: Any person who knowingly procures or offer any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine might be filed, registered or recorded under any law of this state or of the United States, is guilty of a felony.

1   trustee may be imputed to its principal, the beneficiary.

2   65.  A trustee has a duty not to conduct an illegal, fraudulent or willfully oppressive sale of

3   property under a power of sale contained in a deed of trust.

4   66.  A trustee is also liable to a trustor or mortgagor in California upon the basic principle of tort

5   liability enunciated in Civil Code §1708 that every person is bound by law not to injure the person

6   or property of another or infringe on any of her rights.  *See also Munger v. Moore,* (1970) 11 Cal.

7   App.3d 1, 7-8.

8   67.  Defendants have breached their duty to Plaintiff and that breach is the proximate cause of

9   the damages suffered by the Plaintiff.

10   68.  The interest in Plaintiff's loan formerly held by MERS and its principal, FREMONT

11   INVESTMENT & LOAN, was extinguished as of August 1, 2006, when FREMONT

12   INVESTMENT & LOAN sold the loan in the mortgage securitization for full loan value received.

13   Accordingly, MERS had no interest to convey in 2011 to HSBC, as Trustee for the FREMONT

14   HOME LOAN TRUST 2006-B. Therefore, the January 6, 2011 assignment from MERS to HSBC is

15   fraudulent, null and void.

16   69.  FIRST AMERICAN TRUSTEE cannot legally exercise the power of sale under Plaintiff's

17   deed of trust for the additional reason that it is neither a valid substitute trustee nor an authorized

18   agent of the true beneficiary and mortgagee. Here, the Substitution of Trustee instruments (*i.e.*, 1st

19   SOT on October 26, 2010; 2nd SOT on December 22, 2011; and 3rd SOT on February 16, 2012)

20   violate the provisions of Cal. Civil Code section 2934a, which requires that the trustee substitutions

21   must be executed and acknowledged by all beneficiaries.

22   70.  FIRST AMERICAN TRUSTEE cannot legally conduct a foreclosure sale of Plaintiff's

23   property for the additional reason that the NOD (Exhibit "E") was executed and recorded on behalf

24   of an invalid beneficiary, in violation of Cal. Civil Code sections 2924(a)(1) and (a)(6).

25   71.  Specifically, Defendants have violated Cal. Civil Code sections 2924.17(a) and (b) that

26   require that before filing a notice of default, notice of sale, assignment of deed of trust or

27   substitution of trustee, "a mortgage servicer shall insure that it has reviewed competent and reliable

28   evidence to substantiate the borrower's default and the right to foreclosure including the borrower's

1   loan status and loan information".  As cited hereinbefore, the Assignment of DOT, NOD, SOT and

2   NOTS instruments are invalid documents. Therefore, Defendants violated their respective duty of

3   care under section 2924.17.

4      72.   Defendants' egregious violations of California's non-judicial foreclosure statute and

5   common law constitute civil fraud under Cal. Civ. Code sections 1572, 1708, 1709, 1710 2924(a)(6)

6   and criminally actionable fraud under Cal. Penal Code sections 115 and 532(f)(a). These knowing,

7   blatant violations of law have served to deprive Plaintiff of her constitutional due process rights

8   guaranteed by the U.S. Constitution and Art. I section 7 of California's Constitution.

9      73.   Moreover, Articles 3 and 9 of the federal Uniform Commercial Code ("UCC") set forth the

10   rules determining whether an entity attempting to enforce a promissory note is, in fact, a person

11   entitled to enforce the note", UCC section 3-301, and whether the purchaser of the note or creditor

12   of the payee to whom it was issued obtained a property interest in the note.  UCC section 9-

13   109(a)(3).  Articles 3 and 9 have been adopted by California and are set forth in Divisions 3 and 9 of

14   the California Uniform Commercial Code.

15      74.   The detailed allegations of fact set forth in this Verified Complaint establish that none of the

16   named defendants to this action is "a person entitled to enforce the note" or a purchaser of the note

17   or creditor of the payee to whom it was issued that obtained a property interest in the note.

18      75.   The facts show that none of the defendants is a "person entitled to enforce" or is someone

19   who holds some ownership or other interest in the Note.

20      76.   If the "maker", *i.e.*, the person obligated on the note, pays someone other than a "person

21   entitled to enforce", even if that person physically possesses the note the maker signed, then the

22   payment has no effect on the obligations under the note.  The maker still owes the money to the

23   person entitled to enforce. Therefore, payment to a person who is not entitled to enforce the note

24   may place the "maker" in default of his or her obligations under the note.  See UCC 3-602.

25      77.   The primary purpose of the real party in interest doctrine is to ensure that such mistaken

26   payments do not occur.

27      78.   Moreover, for a mortgage to be in default, the borrower, or maker of the promissory note,

28   must have dishonored the note.  Under UCC section 3-502, a promissory note is not dishonored until

1   the maker refuses to pay it **when presentment thereof is made.**  "Presentment" is defined as a

2   demand to pay the instrument made by a person entitled to enforce an instrument.  The UCC also

3   requires that "[u]pon demand of the person to whom presentment is made, the person making

4   presentment **must** exhibit the instrument. UCC 3-501(B)(2)(a).

5       79.  Until proper presentment is made, the UCC requires that the "obligation is suspended to the

6   same extent the obligation would be discharged if an amount of money equal to the amount of the

7   instrument were taken ... in the case of a note, suspension of the obligation continues until dishonor

8   of the note or until it is paid".  UCC 3-310(b).

9       80.  Therefore, the borrower, here the Plaintiff, is not in default until the lender can exhibit the

10   instrument, proving dishonor.

11       81.  In initiating and pursuing the aforementioned illegal and fraudulent foreclosure

12   proceedings, MERS, OCWEN, HSBC, and FIRST AMERICAN TRUSTEE have acted with willful

13   oppressiveness and malice toward the Plaintiff.

14       82.  Plaintiff has suffered damages proximately caused by the illegal and fraudulent foreclosure

15   activities against her by Defendants, including but not limited to, the loss of her home property, the

16   loss of her down payment on the loan, the inability to modify the terms of her mortgage loan,

17   increased costs and fees assessed against her associated with the wrongful foreclosure activities, the

18   inability to cure the purported default, severe emotional distress, the costs of retaining a forensic

19   mortgage loan auditor and attorney to investigate the fraudulent and otherwise illegal activities of

20   the defendants and damage to their credit.  Plaintiff is also entitled to and seeks punitive damages

21   against the Defendants as a result of the illegal, fraudulent and willfully oppressive foreclosure

22   activities against Plaintiff that defendants personally conducted.

23           **WHEREFORE,** Plaintiff requests judgment in Plaintiff's favor and an order of the

24   Court:

25       (a)  Awarding compensatory damages in an amount to be proved at trial;

26       (b)  Emotional distress damages in an amount to be proved at trial; and

27       (c)  Punitive damages in an amount sufficient to deter similar conduct on the part of the

28   Defendants in the future.

83.  Defendants OCWEN and HSBC caused its agent, FIRST AMERICAN TRUSTEE, to breach its duty of care to Plaintiff by initiating foreclosure proceedings against Plaintiff based on the illegal and knowingly fraudulent foreclosure documents filed by FIRST AMERICAN TRUSTEE at the behest of its principal (Defendants OCWEN and HSBC) that also violate the requirements of California's non-judicial foreclosure statute.

84.  Specifically, HSBC or OCWEN caused FIRST AMERICAN TRUSTEE to issue a Notice of Default on June 25, 2009 against the Plaintiff's; and MERS recorded a fraudulent assignment on March 7, 2011 to HSBC as Trustee for the FREMONT HOME LOAN TRUST 2006-B, purportedly transferring the beneficial interest in Plaintiff's Deed of Trust. This was a sham transaction to purportedly establish HSBC's standing in the Mortgage Loan. The Notice of Default is the cornerstone of the non-judicial foreclosure statute. The issuance of the NOD on behalf of an entity which does not hold the beneficial interest in the DOT renders the NOD null and void.  Therefore, all ensuing foreclosure documents and foreclosure activity (NOTS and TDUS) are each similarly null and void.

85.  In initiating the aforementioned illegal and fraudulent foreclosure proceedings, Defendants HSBC, OCWEN and FIRST AMERICAN TRUSTEE have acted with willful oppressiveness and malice toward the Plaintiff.

86.  Plaintiff has suffered damages proximately caused by the illegal and fraudulent foreclosure activities against him by Defendants HSBC, OCWEN and FIRST AMERICAN TRUSTEE, including but not limited to the imminent loss of her real property, severe emotional distress, mortgage payments wrongfully paid to OCWEN (and its LITTON) which had no authority to collect such payments, increased costs and fees assessed against him associated with the wrongful foreclosure activities, inability to modify the terms of her mortgage, fees paid to a forensic mortgage securitization auditor and attorneys *and, inter alia*, damage to her credit.  Plaintiff is also entitled to and seek punitive damages against Defendants HSBC, OCWEN and FIRST AMERICAN TRUSTEE as a result of the illegal, fraudulent and willfully oppressive foreclosure activities against Plaintiff that HSBC and OCWEN personally conducted as well as those committed by FIRST AMERICAN TRUSTEE at HSBC and OCWEN's direction.

1

## COUNT 2:  FRAUD

2

### (Against All Defendants)

3   87.   Plaintiff re-alleges and incorporates the preceding paragraphs by reference as though fully

4   set forth herein.

5   88.   Plaintiff is informed and believe and thereon allege that the Defendants, and each of them,

6   in doing the things as hereinbefore alleged acted as to Plaintiff's with malice and ill will, knowing

7   that their actions would cause Plaintiff great trauma, financial and emotional suffering. The conduct

8   of the defendants is knowingly without legal justification. Plaintiff is further informed and believes

9   and thereon alleges that unless the callous, intentional and unlawful conduct of the Defendants, and

10   each of them is not punished severely with an appropriate award of exemplary and punitive

11   damages, Defendants and each of them will continue to plague the citizens of this country with their

12   illegal actions.

13   89.   Plaintiff re-alleges that MERS was no longer the nominal beneficiary in the DOT after the

14   Plaintiff's Mortgage Loan was irrevocably sold in August 2006 by original lender FREMONT

15   INVESTMENT & LOAN (MERS' principal and nominator in the DOT). Even though MERS knew

16   or should have known that its principal and nominator had already long sold the Plaintiff's Mortgage

17   Loan well over four (4) years earlier in the securitization transaction, and that FREMONT

18   INVESTMENT & LOAN's ownership and MERS' beneficial interest in the Mortgage Loan had

19   already been effectively EXTINGUISED after August 3, 2006, Defendant MERS continued to

20   fraudulently and willfully pretended that it still has beneficial interest in Plaintiff's Mortgage Loan

21   by illegally assigning the DOT on January 6, 2011 to HSBC, as Trustee for the FREMONT HOME

22   LOAN TRUST 2006-B, and recording such instrument on January 31, 2011. Such an assignment

23   was orchestrated by defendants to cover up the botched securitization and paper over the irreversible

24   broken of chain of title in the Mortgage Loan. MERS and HSBC further knew they did not have the

25   required endorsement of Plaintiff's Note.

26   90.   Defendants MERS, HSBC or OCWEN authorized its agent FIRST AMERICAN TRUSTEE

27   to falsely hold itself out as the lawful trustee under Plaintiff's DOT, executing and recording false

28   Substitution of Trustee instruments. FIRST AMERICAN issued the NOD <u>without</u> specifically

stating or disclosing the name of the "present beneficiary" in Plaintiff's DOT. FIRST AMERICAN

TRUSTEE declared in the NOD the following false statement:

> "That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

*See* Exhibit "E", *supra*.

Also, the Declaration of Compliance to Cal. Civ. Code § 2923.5 by LITTON that was attached to

the NOD contains the following false statements:

> "The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civil Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed"

*See id.*

91.   The abovementioned statement are knowingly false because the valid mortgagee,

beneficiary or authorized agent never even tried to contact the Plaintiff regarding her financial

situation and options to avoid foreclosure, as required by Cal. Civ. Code § 2923.5. Defendants knew

that Plaintiff's Mortgage Loan had long been sold to the FREMONT HOME LOAN TRUST 2006-

B in August 2006, and that the securitization had failed.

92.   Furthermore, FIRST AMERICAN TRUSTEE purports here to be agent for the "present

Beneficiary" in the DOT who is not specifically disclosed (and named) in the NOD. Under Section

2924(a)(1) of California's non-judicial foreclosure statute, only a "trustee, mortgagee, or beneficiary

or any of its authorized agents" may issue and record a NOD. Section 2924(a)(1)(C) also provides

that the NOD must include a statement setting forth the nature of each breach actually known to the

beneficiary. As cited with specificity throughout this complaint, Defendant MERS was no longer a

valid nominal beneficiary because the mandated chain of title protocol was not followed causing the

securitization of Plaintiff's Mortgage Loan to fail. Similarly, on the date the NOD was issued and

recorded Defendant OCWEN's predecessor LITTON may be the designated servicer of the

mortgage loans in the trust fund of the REMIC MBS Trust, but it is not a valid or authorized

servicer on Plaintiff's Mortgage Loan and most definitely not a valid beneficiary; and FIRST

1    AMERICAN TRUSTEE was <u>not</u> appointed to serve as trustee in the DOT either. At any time, there

2    is also no evidence or supporting documentation to show that FIRST AMERICAN TRUSTEE is the

3    authorized agent of the true trustee, or mortgagee and present beneficiary in the DOT after the

4    Mortgage Loan was irrevocably sold in the verified securitization transaction in August 2006.

5        93.  Like its predecessor LITTON, Defendant OCWEN held itself out as the authorized servicer

6    or agent entitled to collect mortgage payments from Plaintiff even after original lender FREMONT

7    INVESTMENT & LOAN had already long sold Plaintiff's DOT and Note for full value received in

8    August 2006. From that point forward, LITTON, and its successor OCWEN, continued to act as the

9    purported servicer in Plaintiff's Loan (on behalf of itself or the REMIC MBS Trust who was never

10    the assignee in the DOT and indorsee in the Note) − making false representations, with intent of

11    inducing Plaintiff into accepting that they are the secured lender in the Mortgage Loan, so Plaintiff

12    would continue to make her monthly payments to them. Plaintiff reasonably relied on such false

13    assertions to be true and made multiple and continued mortgage payments to said servicers, remitted

14    full payment of arrears to cure the purported loan default and believing defendants to be the owner

15    in her Mortgage Loan. Based on reliance to defendants' false claims, Plaintiff was harmed by each

16    and every mortgage payment that was paid to LITTON and Defendant OCWEN as servicers of the

17    REMIC trust entity. These amounts begin from the day the Mortgage Loan was irrevocably sold by

18    FREMONT INVESTMENT & LOAN on August 1, 2006 until Plaintiff stopped making monthly

19    mortgage payments.

20        94.  Plaintiff alleges that LITTON and its successor OCWEN made assertions, on multiple

21    occasions, that it had rights to collect mortgage payments and/or cause the foreclosure action against

22    Plaintiff's property. Plaintiff never received notification that the secured lender and beneficiary in

23    her Mortgage Loan had changed. Before and after the issuance of the Notice of Default and Notices

24    of Trustee's Sale by FIRST AMERICAN TRUSTEE, Plaintiff received numerous debt collection

25    calls from various LITTON and OCWEN representatives, who demanded payment(s) as purported

26    secured creditor and beneficiary in her Mortgage Loan.

27        95.  Defendants MERS, HSBC, OCWEN and its agent FIRST AMERICAN TRUSTEE

28    knowingly caused to be filed the fraudulent Assignment of DOT, SOT NOD, NOTS and TDUS

1   instruments that are each adverse to Plaintiff's title in her home property as not one of these parties

2   had a valid ownership and/or beneficial interest in the Mortgage Loan at the time said mortgage

3   assignment, trustee substitutions and foreclosure instruments were issued and therefore, in violation

4   of the non-judicial foreclosure statutes, because not one of them has the right, authority and power to

5   collect mortgage payments, initiate foreclosure proceedings and conduct the foreclosure sale of

6   Plaintiff's home property.

7   96.   Defendants MERS, HSBC and OCWEN (including its predecessor LITTON) had

8   knowledge of the falsity of the Assignment of DOT and SOT instruments. Each and all these parties

9   intended to defraud Plaintiff. Similarly, Defendants HSBC, OCWEN and FIRST AMERICAN

10  TRUSTEE had knowledge of the falsity of the NOD, NOTS and TDUS, but caused it to be issued

11  and recorded any way with the intent to defraud Plaintiff.  Likewise, Defendant OCWEN (including

12  its predecessor LITTON) knew that it had no authority to collect mortgage payments from Plaintiff

13  because OCWEN (and its predecessor LITTON, or even HSBC, as Trustee for the FREMONT

14  HOME LOAN TRUST 2006-B), does not have any ownership or beneficial interest in the Mortgage

15  Loan but nevertheless demanded and took payment from Plaintiff with intent to defraud.

16  97.   Plaintiff justifiably relied on Defendants' false representations and suffered harm as a direct

17  and proximate result of these deliberately false representations. Specifically, the issuance of the

18  fraudulent Assignment of DOT and trustee substitutions was necessary to cover up the botched

19  securitization; and for the Defendants to initiate and advance the illegal foreclosure proceedings.

20  Thus, Defendants MERS, HSBC and OCWEN's collective fraudulent acts proximately and actually

21  allowed its agent, Defendant FIRST AMERICAN TRUSTEE, to initiate and complete the illegal

22  foreclosure of Plaintiff's home property through the use of the aforementioned fraudulent and

23  invalid documents. The NOD, NOTS and TDUS have also negatively impaired and continues to

24  impair Plaintiff's creditworthiness. In addition, Plaintiff and her family have suffered, and continue

25  to suffer severe emotional distress as a result of the fraud perpetrated upon them by the Defendants.

26  98.   Defendants, and each of them, have acted intentionally and with malice and oppression

27  against Plaintiff, proximately and actually causing Plaintiff harm. The aforementioned Defendants'

28

conduct was egregious and encompassed a scheme and pattern of behavior, entitling Plaintiff to an award of exemplary and punitive damages.

### COUNT 3:  VIOLATION OF BUSINESS AND PROFESSIONS CODE, §17200 *et seq.*

### (Against All Defendants)

99.    Plaintiff refers to and incorporates by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

100.  California Business and Professions Code §17200 et seq. (also known as the Unfair Competition Law or UCL) prohibits acts of unfair competition, which means and includes any "fraudulent business practice" and conduct which is "likely to deceive" or is "fraudulent" within the meaning of §17200.

101.  As more fully described above, the acts and practices of Defendants are likely to deceive and constitute fraudulent business acts or practices. This conduct is ongoing and continues to this day.

102.  Specifically, and as set forth with greater particularity in preceding paragraphs, Defendant OCWEN has and continues to engage in deceptive business practices with respect to mortgage servicing and Defendant FIRST AMERICAN TRUSTEE holding itself out as trustee in the DOT. Defendant MERS deceptively continued to represent itself as nominal beneficiary in the mortgage and Defendant HSBC falsely claims to hold some type of interest in Plaintiff's Mortgage Loan as its "investor", when in fact, it never received a valid assignment and transfer of the Mortgage Loan in the securitization process. Therefore, these Defendants are, *inter alia*:

a.   Executing false and misleading documents, without the legal authority, including fabrication of the January 1, 2011 Assignment of Deed of Trust (by MERS to HSBC); September 8, 2010 NOD; October 26, 2010, December 22, 2011 and February 16, 2012 SOTs (by LITTON for HSBC; and by OCWEN for HSBC); December 10, 2010 and January 6, 2012 NOTS (by FIRST AMERICAN TRUSTEE); and May 1, 2012 TDUS (by FIRST AMERICAN TRUSTEE).

b.   Acting as servicer, beneficiary, investor and mortgage trustee without the legal authority to do so (OCWEN, MERS, HSBC and FIRST AMERICAN TRUSTEE);

c.   Failing to comply with California Civil Code §§1709 and1710 (MERS, OCWEN, HSBC

1    and FIRST AMERICAN TRUSTEE);

2        d.   Violating provisions of the non-judicial foreclosure statute set forth at California Civil

3    Code §§ 2924(a)(1) and 2924(a)(6), 2924,17 and 2934a  (OCWEN, MERS, HSBC and FIRST

4    AMERICAN TRUSTEE);

5        e.   Collecting mortgage payments under false pretense without authority to do so and on

6    behalf of an invalid beneficiary (OCWEN, HSBC);

7        f.   Collecting mortgage payments from Plaintiff with the knowledge that Plaintiff's Mortgage

8    Loan had already been paid in full or is guaranteed to be paid to the investors by the terms and

9    provisions of the trust agreement and instrument (PSA) (OCWEN, HSBC);

10       g.   Committing a felony under §115 of the California Penal Code (all defendants);

11       h.   Committing mortgage fraud within the meaning of Cal. Penal Code §532(f)(a) (all

12    defendants); and

13       i.   Engaging in other deceptive practices, including those which may be uncovered during the

14    course of discovery (MERS, OCWEN, HSBC and FIRST AMERICAN TRUSTEE).

15       103.   Plaintiff alleges that the named Defendants' misconduct, as alleged herein, gave, and has

16    given, Defendants, and each of them, an unfair competitive advantage over their competitors. The

17    scheme implemented by Defendants, in collusion with one another, is specifically designed to

18    defraud California consumers and enrich Defendants at the expense of consumers in this State.

19       104.   By reason of the foregoing, Defendants should be enjoined from continuing such practices

20    pursuant to California Business & Professions Code §§17203 and 17204.  Plaintiff has suffered

21    injury in fact, including but not limited to, the inability to cure the purported loan default, modify

22    the terms of her loan and monies paid to these defendants which have no right to collect mortgage

23    payments from Plaintiff. In addition, Plaintiff has paid fees to a forensic mortgage securitization

24    auditor and attorney to learn and defend her property and constitutional due process rights.

25    Undoubtedly, other members of the public, similarly have fallen victim to Defendants' deceptive

26    schemes, are likely to be injured as well.

27       105. The harm to Plaintiff and to members of the general public outweighs the utility (if any) of

28    Defendants' policies and practices. Consequently, their policies and practices constitute unlawful

1  business acts or practices within the meaning of Business & Professions Code §17200.  Moreover,

2  the foregoing conduct promotes an incipient violation of a consumer law, or violates the policy or

3  spirit of such law or otherwise significantly threatens or harms competition.

4      106.  Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under

5  Business & Professions Code §17200 *et seq.* and related sections and under any California private

6  attorney general statutes. The acts and practices described in the foregoing paragraphs are unfair and

7  violate the Business & Professions Code because they constitute violations of all the statutes

8  previously listed above.

9      **WHEREFORE, Plaintiff prays the Court for an Order and Decree that**:

10      a.   Pursuant to Business & Professions Code §17203, Defendants MERS, OCWEN, HSBC

11  and FIRST AMERICAN TRUSTEE, their successors, agents and assigns, representatives,

12  employees, and all persons who act in concert with them, are permanently enjoined from committing

13  all acts of unfair competition in violation of §17200;

14      b.   Plaintiff is entitled to an award of statutory attorney's fees;

15      c.   Plaintiff is entitled to statutory damages including damages available under relevant private

16  attorney general statutes, including Cal. Code Civ. Pro. §1021.5;

17      d.   Plaintiff is entitled to the cost of suit; and

18      e.   Any other relief the Court deems just and proper.

19  **COUNT 4: UNJUST ENRICHMENT**

20  **(Against OCWEN and HSBC)**

21      107.  Plaintiff refers to and incorporates by this reference the allegations contained in the

22  foregoing paragraphs as though set forth fully herein.

23      108.  Defendants OCWEN and HSBC claim rights to payments on Plaintiff's Mortgage Loan.

24  Plaintiff has in fact made payments to OCWEN (for itself or for HSBC) pursuant to and in reliance

25  upon OCWEN and HSBC's claim to rights to such payments.

26      109.  As alleged hereinabove, Defendants OCWEN and HSBC do not have rights to such

27  payments. OCWEN and HSBC, falsely purporting to be servicer and beneficiary of Plaintiff's

28  Mortgage Loan, respectively, has collected mortgage payments from Plaintiff for the benefit of

1  OCWEN or for HSBC, an invalid investor. Defendants had knowledge of such circumstances giving

2  rise to unjust enrichment at the time of claiming rights to payment from Plaintiff on the loan.  Said

3  Defendants acquired a benefit at the expense of Plaintiff without Plaintiff's knowledge or consent.

4      110.  Moreover, the investors in the FREMONT HOME LOAN TRUST 2006-B have either

5  already been paid as it relates to Plaintiff's Mortgage Loan and/or guaranteed payment under the

6  terms and provisions of the trust agreement/instrument.

7      111.  There exists no express contract between Plaintiff and Defendants governing the collection

8  of mortgage payments and foreclosure fees and expenses.

9      112.  Since the inception of the loan, Defendants have received a benefit from Plaintiff for

10  money had and received.  It is unjust for Defendants to retain the benefit at the expense of Plaintiff.

11      **WHEREFORE,** Plaintiff requests that this Court issue an Order and Decree that the named

12  Defendants and each of them had no right to payments on the loan and that Defendants and each of

13  them shall return to Plaintiff all payments made to LITTON and its successor-servicer OCWEN and

14  to, or on behalf of, HSBC.

15  **COUNT 5:  QUIET TITLE**

16  **(Against Defendants MERS, OCWEN and HSBC)**

17      113.  Plaintiff re-alleges and incorporates the preceding paragraphs by reference as though fully

18  set forth herein.

19      114.  Plaintiff is, and at all times herein mentioned was, the owner and/or entitled to exclusive

20  possession of the real property located at 390 Biscayne Avenue, Foster City, County of San Mateo,

21  California 94404.  The full legal description of the Subject Property under APN 094-950-380-9 is

22  attached to the Deed of Trust as its Exhibit A.  *See* DOT as **Exhibit "A"** hereto.

23      115.  As cited, Defendant OCWEN claims a right to collect mortgage payments and associated

24  costs and fees as purported servicer of Plaintiff's loan. Even if OCWEN is a valid servicer (which is

25  not the case here), it has collected mortgage payments on behalf of invalid beneficiaries – itself and

26  purported investor, HSBC, as Trustee for the FREMONT HOME LOAN TRUST 2006-B.

27  Defendants' claims are adverse to Plaintiff's because neither MERS, OCWEN nor HSBC is a holder

28  of the Note, cannot prove any interest in the Note or that the Note is secured by the DOT, as well as

1    for the reasons set forth in the causes of action *supra* and *infra*. As such, neither MERS, OCWEN

2    nor HSBC has a right, title, lien, or interest in the Subject Property.

3        116.  Plaintiff seeks to quiet title against the claims of Defendants MERS, OCWEN and HSBC

4    and all persons, known and unknown, claiming any legal or equitable right, title, estate, lien, or

5    adverse interest in the Subject Property as of the date the Verified Complaint was filed (Cal. Code

6    Civ. Proc. §760.020). Defendants MERS, OCWEN and HSBC claim an interest in the property

7    adverse to Plaintiff's herein. However, the claim of said Defendants is without any right whatsoever,

8    and said Defendants have no legal or equitable right, claim, or interest in the property. Plaintiff

9    therefore seeks a declaration that the title to the Subject Property is vested in Plaintiff alone, free and

10    clear of encumbrances in favor of Defendants and persons known and unknown, and that the

11    Defendants herein and persons known and unknown, and each of them, be declared to have no

12    estate, right, title, lien or interest in the Subject Property and that said Defendants and persons

13    known and unknown, and each of them, be forever enjoined from asserting any estate, right, title,

14    lien or interest in the Subject Property adverse to Plaintiff herein. Plaintiff seeks an order from this

15    court instructing the clerk of the court to execute in recordable form a deed of reconveyance to

16    Plaintiff's Property.

17        117.  Plaintiff is not required to tender any outstanding mortgage debt because the Defendants

18    seeking to collect the debt are without standing to do so.

19        **WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them as**

20    **hereinafter set forth.**

21    **<u>COUNT 6: ACCOUNTING</u>**

22    **(Against OCWEN and HSBC)**

23        118.  Plaintiff refers to and incorporates by this reference the allegations contained in the

24    foregoing paragraphs as though set forth fully herein.

25        119.  Defendants OCWEN and HSBC owe Plaintiff money to which they are not entitled and

26    which they obtained from Plaintiff under false pretenses. *See* allegations set forth in Count 4, *supra*,

27    which are specifically incorporated by reference herein.

28        120.  The accounts are complicated; therefore, an accounting is necessary to determine the sums

1  owed to Plaintiff by each of the Defendants.

2  **WHEREFORE,** Plaintiff requests that the Court order an accounting to determine the sums

3  owed to Plaintiff by each of the Defendants.

4  **WHEREFORE, Plaintiff requests that this Court take jurisdiction of this claim and issue**

5  **an Order and Decree that:**

6  a. There was never any proper legal assignment of the full and unencumbered legal interest in

7  the Note and Deed of Trust from the original lender to any Defendant;

8  b. Neither of the Defendants has any legal rights in either the Note or the Deed of Trust;

9  c. Defendants have no standing and legal right to institute and pursue any foreclosure

10  proceedings; and

11  d. Defendants and their agents, representatives and assigns are prohibited from collecting

12  mortgage payments from the Plaintiff.

13  **PRAYER FOR RELIEF**

14  **WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them as**

15  **set forth below: The damages claimed by Plaintiff exceed $75,000.**

16  1. For an order to rescind the foreclosure sale of Property and voiding the Trustee's Deed

17  Upon Sale;

18  2. For an order, decree or judgment that the Assignment of DOT (Exhibit "D"), Notice of

19  Default (Exhibit "E"), Substitutions of Trustee (Exhibits "F", "H" and "J"), Notices Trustee's Sale

20  (Exhibits "G" and "I") and Trustee's Deed Upon Sale (Exhibit "L") recorded against Plaintiff's

21  Mortgage Loan are each defective fraudulent documents and must be cancelled and removed from

22  the public records in the San Mateo County Recorder's Office as VOID documents and that

23  necessary steps are taken to execute a full deed of reconveyance of the Deed of Trust in favor of

24  Plaintiff;

25  3. For an order forever enjoining the defendants, and each of them, their agents,

26  representatives, successors and assigns, from re-initiating and pursuing any foreclosure action

27  against the Plaintiff relating to the Subject Property;

28

1        4.    For an order compelling said Defendants, and each of them, to transfer legal title and

2    possession of the Subject Property to Plaintiff herein;

3        5.    For a finding and determination that Plaintiff is the rightful holder of the title to the

4    Property, and that Defendants herein, and each of them, have no estate, right, title, lien or interest in

5    said Property;

6        6.    For a judgment forever enjoining said defendants, and each of them, from claiming any

7    estate, right, title, lien or interest in the Subject Property;

8        7.    For a judgment that not one of the Defendants has any unencumbered legal interest in both

9    the Note and DOT;

10       8.    Plaintiff further prays that the Court issue an Order for Defendants, and each of them, to

11   remove and cure all reports based upon fraudulent documents Defendants made to all Credit

12   Reporting Agencies which are derogatory to Plaintiff's credit standing.

13       9.    For a finding that Defendants OCWEN and HSBC, and each of them, have been unjustly

14   enriched, and ordering an accounting to determine the sums owed to Plaintiff by each Defendant and

15   that the same, with interest at the legal rate, shall be reimbursed to Plaintiff.

16       10. For general, consequential and special damages according to proof;

17       11. For reasonable attorney's fees;

18       12. For costs of suit herein; and

19       13. For such other and further relief as the court deems just and proper.

20

21                                               **LAW OFFICES OF MARK W. LAPHAM**

22

23   Dated:  February 18, 2015              By: _//s/Mark W. Lapham_____
                                                Mark W. Lapham
24                                              Attorney for Plaintiff
                                                TSUNEYOSHI SURUKI
25

26

27

28

---

*T. Suruki v. Ocwen Loan Servicing, LLC, et al.*              VERIFIED COMPLAINT              38

## **VERIFICATION**

I, TSUNEYOSHI SURUKI, declare as follows:

I am the Plaintiff in this action, and I hereby declare I have read the foregoing Verified Complaint and know the contents thereof and believe that the matters stated therein are true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under the penalty of perjury, under the laws of the United States of America that the foregoing statements are true and correct to the best of my information and belief.

This verification was executed this 18th day of February 2015 in San Mateo County, California.

                                   //s/Tsuneyoshi Suruki
                                   TSUNEYOSHI SURUKI