UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TSUNEYOSHI SURUKI,<br><br>    Plaintiff,<br><br>    v.<br><br>OCWEN LOAN SERVICING, LLC, et al.,<br><br>    Defendants. | Case No. 15-cv-00773-JST<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 66, 68 |

Before the Court is Defendants Ocwen Loan Servicing, LLC ("Ocwen"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and HSBC Bank USA's ("HSBC") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), ECF No. 68, as well as Defendant First American Trustee Servicing Solutions, LLC's ("First American") Motion to Dismiss Plaintiff's FAC, ECF No. 66. The Court will grant both motions without leave to amend.

**I.      BACKGROUND**

**A.  Allegations in the FAC**

On April 20, 2006, Plaintiff Tsuneyoshi Suruki obtained a mortgage loan in the amount of $740,000, consisting of a Deed of Trust ("DOT") and 30-year Adjustable Rate Note ("Note") from Fremont Investment and Loan to purchase real property in Foster City, California. ECF No. 60 ¶¶ 1, 8. The DOT named Fremont General Credit Corporation as trustee and MERS as the beneficiary, and it was recorded in San Mateo County on April 28, 2006. Id. ¶ 8. In June of 2008, Litton Loan Servicing, LP acquired Fremont Investment and Loan. Id. ¶ 18. Later, Litton was succeeded by Ocwen as loan servicer. Id. ¶ 19. Plaintiff subsequently defaulted on the loan, and the property was sold at a trustee's sale in 2012. Id. ¶ 25; ECF No. 63 at 1.

Plaintiff's seven causes of action arise from alleged irregularities in the assignment and securitization of the loan, which he claims invalidated Defendants' authority to engage in

foreclosure proceedings. ECF No. 63 at 1. Specifically, Plaintiff alleges that Fremont Investment and Loan bundled Plaintiff's mortgage into a pool with other mortgages and sold it to the affiliate Fremont Mortgage Securities Corporation on August 1, 2006. ECF No. 60 ¶ 10. Plaintiff claims there was "no evidence that any lawful assignment and transfer . . . was completed" for the sale in contravention of the terms of a Mortgage Loan Purchase Agreement ("MLPA") filed with the U.S. Securities and Exchange Commission. Id.

Plaintiff further alleges that Fremont Mortgage Securities formed a mortgage-backed securities trust (the "Fremont Home Loan Trust 2006-B") pursuant to a Pooling and Servicing Agreement ("PSA") dated August 1, 2006. Id. ¶ 11. Fremont Mortgage Securities then "sold and securitized each of the pooled mortgage loans (including the Subject Loan)" into the Fremont Home Loan Trust 2006-B. Id. ¶ 12. HSBC, as trustee for the Fremont Home Loan Trust 2006-B, then became owner of the pooled mortgage loans. Id. However, the PSA set a closing date of August 3, 2006, or 90 days thereafter, as the deadline "for HSBC as Trustee . . . to legally receive and accept contribution of any mortgage loan asset into its trust fund." Id. ¶ 13. Plaintiff claims that "the official records of the San Mateo County Recorder's office do[] not show any assignment of the mortgage (DOT) from original lender [Fremont Investment and Loan] to any entity, on or before the August 3, 2006 Closing Date . . . or 90 days thereafter." Id. ¶ 14. Plaintiff therefore contends that the undocumented transfers constitute a "material breach" of the MLPA and PSA, resulting in a "break in the chain of title of the mortgaged property" so that the successor-lender to which Plaintiff owes obligations is "unassigned," "undocumented," and "unknown." Id. ¶ 15. Plaintiff further contends that the "only mortgage assignment found on record with the San Mateo County Recorder" is a "defective" one issued by MERS to HSBC that is dated January 6, 2011. Id. ¶ 16. The defect is that MERS issued the assignment over 4 years after the PSA Closing Date. Id. Applying New York trust laws, which govern the agreements, Plaintiff alleges that the belated transfer and assignment is not allowed, the transaction is void, and HSBC therefore cannot authorize Litton or Ocwen to service Plaintiff's loan or to allow First American to pursue foreclosure activities against Plaintiff. Id. ¶¶ 13, 19, 21.

**B. Procedural Background**

On February 19, 2015, Plaintiff filed a complaint, asserting claims for wrongful foreclosure, fraud, and violations of the California Business and Professions Code § 17200 *et seq.* against all Defendants. ECF No. 1. Plaintiff further asserted claims for unjust enrichment against Ocwen and HSBC, as well as quiet title and accounting against MERS, Ocwen, and HSBC. Id. On April 3, 2015, Defendants HSBC, MERS, and Ocwen filed a Motion to Dismiss, which was stayed until February 29, 2016, after the California Supreme Court issued Yvanova v. New Century Mortgage Corp., 62 Cal. 4th 919 (2016). ECF Nos. 17, 34, 40. On March 25, 2016, Defendant First American Trustee and Defendants HSBC, MERS, and Ocwen filed separate amended Motions to Dismiss. ECF Nos. 41, 43. This Court granted the motions with leave to amend on July 22, 2016. ECF No. 58.

On August 22, 2016, Plaintiff filed the FAC, asserting claims for (1) wrongful foreclosure; (2) fraud; (3) fraudulent misrepresentation; (4) violation of the California Business and Professions Code § 17200 *et seq.*; (5) violation of the Real Estate Settlement Procedures Act; (6) violation of the Home Ownership Equity Protection Act; (7) violation of the Fair Credit Reporting Act; and (8) quiet title.[1] ECF No. 60. Plaintiff also adds Distressed Home Solutions, LLC. (DHSL) as a defendant. Id. Defendant First American and Defendants Ocwen, MERS, and HSBC moved on September 8, 2016 and September 9, 2016, respectively, to dismiss Plaintiff's FAC, ECF Nos. 66, 68, which motions the Court now considers.

**II. JURISDICTION**

Plaintiff contends that this Court has jurisdiction under the federal diversity jurisdiction statute, 28 U.S.C. § 1332. But Plaintiff is domiciled in California and DHSL, added as a defendant in the FAC, has its primary place of business in California. Accordingly, DSHL's presence as a defendant in this lawsuit destroys the only basis for subject matter jurisdiction. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553-54 (2005)(holding 28 U.S.C.

---

[1] Plaintiff does not specify against which defendants he is asserting claims (3) to (8). The Court will assume they are asserted against all defendants. See ECF No. 60 at 1-2 (stating that all defendants are being sued for all claims).

§ 1332 requires complete diversity and "the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action"). Nonetheless, "Rule 21 [of the Federal Rules of Civil Procedure] grants a federal district or appellate court the discretionary power to perfect its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not indispensable to the action under Rule 19." Sams v. Beech Aircraft Corp., 625 F.2d 273, 277 (9th Cir. 1980). Under Federal Rule of Civil Procedure 19(b), there are four factors for determining whether a party is "indispensable":

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided . . . ; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

White v. Univ. of Cal., 765 F.3d 1010, 1027-28 (9th Cir. 2014). A nondiverse defendant's absence does not prejudice any party under the first and second factors when "[t]here is no risk . . . that any party would be subject to multiple, inconsistent legal obligations were [the defendant] not a party." Cuviello v. Feld Entm't, Inc., 304 F.R.D. 585, 593 (N.D. Cal. 2015). On the other hand, keeping a nondiverse defendant in a suit and dismissing the entire action for lack of subject matter jurisdiction prejudices both the plaintiff and defendants where they have spent substantial time litigating the case and now must "begin anew in another forum." Id. As to the third and fourth factors, a plaintiff "nam[ing] [the nondiverse party] as a defendant in only one of his six causes of action" suggests that the plaintiff still has an adequate remedy in the nondiverse defendant's absence. Id. at 594.

The Court finds that DHSL is a dispensable party. As to the first and second factors, there is "no risk" that any party would be subject to "multiple, inconsistent legal obligations" if DHSL is dropped. See id. at 593. In its previous order dismissing the quiet title claim, this Court reasoned that any adverse claim to the Property must be made against the entity with "right, title, and interest to the Property," which in this case the Court noted would be DHSL. ECF No. 58 at 9 (citing Monreal v. GMAC Mortg., LLC, 948 F. Supp. 2d 1069, 1079 (S.D. Cal. 2013)). Because Plaintiff does not plead any adverse claims by the other defendants, there is no quiet title claim as

to the other defendants[2] and thus no possibility of inconsistent legal obligations by dropping DHSL.  Furthermore, because it has been 20 months since Plaintiff initiated suit; keeping DHSL in the case and dismissing the entire action would prejudice Plaintiff and Defendants who must then begin anew in a different forum.  See Cuviello, 304 F.R.D. at 593 (finding prejudice where litigation had been ongoing for 18 months).  As to the third and fourth factors, as DHSL is only relevant for 1 out of Plaintiff's 8 causes of action, Plaintiff still has an adequate remedy in the absence of DHSL.  See id. at 594 (concluding that Plaintiff still has an adequate remedy when naming nondiverse defendant in 1 out of 6 causes of action).  Because the factors weigh in favor of finding DHSL to be a dispensable party, the Court elects, in its discretion, to dismiss DHSL as a defendant from the case in order to "perfect its diversity jurisdiction."  See Sams, 625 F.2d at 277.

The Court has diversity jurisdiction over the remaining defendants pursuant to 28 U.S.C. § 1332. Plaintiff is domiciled in California and none of the defendants are either incorporated in or have their primary places of business in California.  ECF No. 60 ¶¶ 1-5.  Because Plaintiff alleges damages exceeding $75,000, the amount in controversy requirement is also met.  Id. ¶ 7.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter" that, when accepted as true, "state[s] a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal quotation marks

---

[2] See infra Section IV.G for further discussion of Plaintiff's quiet title claim.

omitted).  In determining whether a plaintiff has met this plausibility standard, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005) (citing Cervantes v. United States, 330 F.3d 1186, 1187 (9th Cir. 2003)).

## IV.   ANALYSIS

### A.  Wrongful Foreclosure

Under California law, the elements for a claim of wrongful foreclosure are:

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 104 (2011).

Plaintiff argues that the assignment of the mortgage loan to the Fremont Home Loan Trust 2006-B did not comply with the PSA, as the assignment did not occur within 90 days of the Closing Date.  ECF No. 60 ¶¶ 13-14.  Because this resulted in "an irreversible break in the chain of title of the mortgage property," the subsequent foreclosure was wrongful.  Id. ¶ 15.  In its previous order, the Court concluded that Plaintiff lacked standing to challenge the alleged deficiencies in the assignment of the mortgage loan.  ECF No. 58 at 5.  Under New York law, which governs the PSA, plaintiffs lack standing when "an act in violation of a trust agreement is voidable—not void."  Morgan v. Aurora Loan Servs., LLC, 646 Fed. Appx. 546, 550 (9th Cir. 2016).  "[A]ny failure to comply with the terms of the PSAs d[oes] not render the acquisition of plaintiffs' loans and mortgages void because [u]nder New York law, unauthorized acts by trustees are generally subject to ratification by the trust beneficiaries."  Id. (internal quotations omitted) (citing Rajamin v. Deutsche Bank Nat'l Trust Co., 757 F.3d 79, 88 (2d Cir. 2014)).

The factual allegations in the FAC do not address the standing issue.  The majority of Plaintiff's allegations are identical to those in the original complaint.  Though Plaintiff does newly allege that "transactions after the first sale of his mortgage loan suffered fatal flaws, rendering all subsequent transactions void, not voidable," Plaintiff fails to add "sufficient factual matter" that

1  "state[s] a claim to relief that is plausible on its face." ECF No. 60 ¶ 13; see Ashcroft, 556 U.S. at
2  678. Because Plaintiff has been unable to cure the deficiency identified by the Court in its
3  previous order, the Court will grant Defendants' motions to dismiss the wrongful foreclosure
4  claim.

### B. Fraud and Fraudulent Misrepresentation[3]

Under California law, "the elements of fraud . . . are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." Conroy v. Regents of Univ. of Cal., 45 Cal. 4th 1244, 1255 (2009).

The Court previously dismissed Plaintiff's fraud claim because Plaintiff failed to plead detrimental reliance. ECF No. 58 at 6. Plaintiff's allegations that he relied on Defendants' false claims and was thus harmed each time he made mortgage payments did not constitute detrimental reliance because Plaintiff was already obligated to make those mortgage payments under the Deed of Trust. Id.

In the FAC, Plaintiff repeats verbatim the majority of the allegations made in the original complaint. Plaintiff adds no new factual matter addressing the issue of detrimental reliance. Because Plaintiff fails to cure the deficiency in his complaint, the Court dismisses the fraud claim. The Court also dismisses the related claim for fraudulent misrepresentation for failure to allege detrimental reliance. See Ajetunmobi v. Clarion Mortg. Capital, Inc., 595 Fed. Appx. 680, 682 (9th Cir. 2014) ("A claim of fraudulent misrepresentation in California requires a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.")

---

[3] Plaintiff adds 4 new claims in the FAC: fraudulent misrepresentation, violation of the Real Estate Settlement Procedure Act, violation of the Home Ownership Equity Protection Act, and violation of the Fair Credit Reporting Act. Defendants Ocwen, MERS, and HSBC argue that the Court should strike these claims because Plaintiff failed to seek the Court's leave before adding them. ECF No. 68 at 19. The Court declines to strike these claims because its prior order granting Defendants' motions to dismiss "with leave to amend" did not explicitly preclude Plaintiff from adding new claims for relief. See ECF No. 58 at 9; see also Andrews Farms v. Calcot, Ltd., 527 F. Supp. 2d 1239, 1254 (E.D. Cal. 2007) (finding no reason to strike a newly added claim given that Federal Rule of Civil Procedure 15 (governing amendments) "assures that cases will be heard on their merits and avoids injustices which sometimes result[] from strict adherence to earlier technical pleading requirements").

United States District Court
Northern District of California

(internal quotation marks omitted).

### C. Section 17200 Claim

"California's unfair competition statute prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" In re Pomona Valley Med. Grp., Inc., 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200). Each prong—unlawful, unfair, and fraudulent—offers an independent basis for relief. Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007). For the unlawful prong, "Section 17200 borrows violations from other laws by making them independently actionable as unfair competitive practices." CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1107 (9th Cir. 2007) (internal quotation marks omitted). Next, a claim directed to the unfair prong "may be proven only on the basis of conduct that threatens an incipient violation of an anti-trust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." ProconGPS, Inc. v. Star Sensor LLC, No. 11-cv-3975-SI, 2011 WL 5975271, at *3 (N.D. Cal. Nov. 29, 2011) (internal quotation marks omitted). Finally, under the fraudulent prong, "plaintiffs must point to a misrepresentation with particularity and plead that the misrepresentation was an immediate cause of the injury-producing conduct, but not necessarily the sole or even the predominant or decisive factor." Pirozzi v. Apple, Inc., 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013) (internal quotation marks omitted).

The Court previously dismissed Plaintiff's Section 17200 claim under all three prongs. ECF No. 58 at 7-8. First, the Court found that Plaintiff failed to allege an unlawful business act or practice because he did not state a claim regarding any other purported violation of the law. Id. at 7. Second, Plaintiff could not establish a claim under the "unfair" prong, because Plaintiff provided only a conclusory allegation that did not explain how Defendants' conduct allegedly harmed competition. Id. Finally, the Court concluded that Plaintiff did not sufficiently allege a causal connection between any alleged misrepresentation and injury to state a Section 17200 claim under the fraudulent prong. Id. at 8. Plaintiff's FAC adds no new factual allegations directed to his § 17200 claim. Plaintiff's oppositions to the motions to dismiss also do not discuss his Section

17200 claim or cite to paragraphs in his FAC that would provide clarity for how his allegations satisfy the requirements of a Section 17200 claim. ECF Nos. 71, 72. As such, the Court dismisses Plaintiff's Section 17200 claim under all three prongs.

### D. Real Estate Settlement Procedures Act

The Real Estate Settlement Procedures Act ("RESPA") prohibits fee splitting of "any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed." 12 U.S.C. § 2607(a)-(b).

Plaintiff alleges in the FAC that Defendants violated Section 2607 because they "accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed." ECF No. 60 ¶ 67. Plaintiff offers no further clarification in his oppositions to the motions to dismiss as to how Defendants violated Section 2607. ECF Nos. 71, 72. The Court concludes that Plaintiff's conclusory allegations, which lack "sufficient factual matter," are insufficient to state a claim for relief. See Ashcroft, 556 U.S. at 662. As such, the Court dismisses Plaintiff's RESPA claim.

### E. Home Ownership Equity Protection Act

The purpose of the Home Ownership Equity Protection Act ("HOEPA") is to "combat predatory lending." Consumer Sols. REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1008 (N.D. Cal. 2009) (quoting In re First Alliance Mortg. Co., 471 F.3d 977, 984 n.1 (9th Cir. 2006)). For "loans that fall within the scope of HOEPA," lenders must "make certain warnings and disclosures." Id. A loan is considered an "HOEPA loan" when one of the following criteria is met:

> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or (B) the total points and fees payable by the consumer at or before closing will exceed the greater of—(i) 8 percent of the total loan amount; or (ii) $400."

Id. (citing 12 C.F.R. § 226.32(a)(1)). The term "creditor" refers to one who:

> (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of

9

>indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g).

Plaintiff alleges in the FAC that "each Defendant is a 'creditor' as defined by the HOEPA" and that his mortgage loan falls within the scope of the HOEPA because Plaintiff was "required to pay excessive fees, expenses, and costs which exceeded more than 10% of the amount financed." ECF No. 60 ¶ 71. The Court finds that Plaintiff fails to allege "sufficient factual matter" to state a claim for relief. See Ashcroft, 556 U.S. at 662. First, Plaintiff alleges no facts suggesting that the mortgage loan falls within the HOEPA, as he provides no details of the annual percentage rate at consummation of the transaction, the yield at that time on Treasury securities having comparable periods of maturity, or the total points and fees paid at or before closing. See 12 C.F.R. § 226.32(a)(1). Second, the FAC lacks facts that suggest each Defendant is a "creditor" subject to the HOEPA. Defendants' arguments that none of them originated Plaintiff's loan and therefore they are not subject to the HOEPA are persuasive. See ECF No. 68 at 26; ECF No. 75 at 6 (referencing the 2006 Deed of Trust, ECF No. 68-2 Ex. A,[4] and the 2010 Substitution of Trustee for First American, ECF No. 68-2 Ex. F). Plaintiff offers no response to Defendants' arguments in his Opposition briefs. ECF Nos. 71, 72. Therefore, the Court dismisses Plaintiff's claim for violation of the HOEPA.

### F. Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA") "imposes some duties on the sources that provide credit information to CRAs [credit reporting agencies]." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009). There are two "categories of responsibilities" pursuant to 15 U.S.C. § 1681s–2. Id. at 1154. First, there is a duty to provide accurate information. Id. (citing § 1681s–2(a)). Second, "upon notice of dispute," the furnisher (defined as the source providing

---

[4] Defendants Ocwen, MERS, and HSBC filed a request for judicial notice, ECF No. 68-1, asking the Court to take judicial notice of Exhibits A through H, consisting of the Deed of Trust and Notices related to foreclosure. Because these documents are all recorded by San Mateo County, and are therefore properly a matter of public record, the Court grants Defendants' request for judicial notice. See Lee v. City of Los Angeles, 250 F. 3d 668, 689 (9th Cir. 2001) ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of matters of public record.") (internal quotations marks omitted).

1 credit information to credit reporting agencies) must conduct an investigation, report the results to the credit reporting agency, and, if there is incomplete or inaccurate information, report it to other agencies and modify, delete, or permanently block the reporting of that information. Id. (citing § 1681s–2(b)). These obligations are triggered only when a furnisher receives notice from the credit reporting agency that the consumer disputes the information. Id.

Plaintiff alleges in the FAC that "Defendants wrongfully, improperly, and illegally reported negative information as to the Plaintiff to one or more Credit Reporting Agencies, resulting in the Plaintiff having negative information on their credit reports." ECF No. 60 ¶ 79. For two reasons, the Court finds that Plaintiff fails to allege a claim for violation of the FCRA. First, Plaintiff does not allege that Defendants furnished "inaccurate" information; Plaintiff merely asserts the reporting of "negative" information. See 15 U.S.C. § 1681s–2(a)(1)(A) ("A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."). Second, the FAC contains no facts suggesting that Plaintiff disputed the credit information and that the credit reporting agency gave notice of the dispute to Defendants. See 15 U.S.C. § 1681s–2(b)(1) ("*After* receiving notice . . . the person [furnisher] shall [carry out certain obligations].") (emphasis added). Due to these deficiencies in the FAC, Court dismisses the claim for violation of the FCRA.

### G. Quiet Title

A complaint for quiet title requires a "description of the property that is the subject of the action," the "title of the plaintiff as to which a determination . . . is sought and the basis of the title," the "adverse claims to the title of the plaintiff," the "date as of which the determination is sought," and a "prayer for the determination of the title of the plaintiff." Cal. Civ. Proc. Code § 761.020.

In its previous order, the Court stated that any adverse claim to the Subject Property must be made against the entity with "right, title, and interest to the Property." ECF No. 58 at 9 (citing Monreal, 948 F. Supp. 2d at 1079). Because that entity would be DHSL, which Plaintiff did not name as a defendant in the original complaint, the Court dismissed the quiet title claim. Id.

Though Plaintiff added DHSL as a defendant in the FAC, the Court has elected to drop DHSL to preserve diversity jurisdiction, as discussed above. As to the remaining defendants, Plaintiff does not plead any facts in the FAC that they have "right, title, and interest" to the property that would cure the deficiency noted previously by this Court. See id. In the FAC, Plaintiff repeats the majority of allegations found in the original complaint while newly alleging that Defendants Ocwen and HSBC "claim rights" to mortgage payments, that "Plaintiff has in fact made payments," and that Ocwen and HSBC "do not have rights to such payments" because they are "falsely purporting to be servicer and beneficiary" of the loan. ECF No. 60 ¶¶ 81-82. None of these statements are allegations of adverse claims by Defendants to the title of the Subject Property. As such, the Court dismisses the claim for quiet title.

## CONCLUSION

Defendant First American's Motion to Dismiss, ECF No. 66, and Defendants Ocwen, MERS, and HSBC's Motion to Dismiss, ECF No. 68, are granted without leave to amend. Because the Court has already given Plaintiff an opportunity to amend the complaint, and Plaintiff failed to correct the deficiencies to state any claim for relief, the Court concludes that further leave to amend would be futile.[5] See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (finding that failure to correct the deficiencies in the amended complaint is "a strong indication that the plaintiffs have no additional facts to plead").

IT IS SO ORDERED.

Dated: December 8, 2016

JON S. TIGAR
United States District Judge

---

[5] Furthermore, in the previous order dismissing Plaintiff's original complaint, the Court "admonish[ed]" Plaintiff to "start from a blank slate" if filing an amended complaint. ECF No. 58 at 6 n.2. Plaintiff was also instructed to "identify for the Court the elements of any claim and explain, by citation to specific paragraphs, where those elements can be found in the complaint" in oppositions to future motions to dismiss. Id. Plaintiff failed to do either, as the majority of the FAC repeats verbatim the content found in the original complaint and Plaintiff's oppositions lack citations to the FAC. See ECF Nos. 60, 71, 72.

12